UNITED STATES of America,
Plaintiff-Appellant,

v.

Domingo SALINAS–CALDERON,
Defendant-Appellee.

No. 82–2433.

United States Court of Appeals,
Tenth Circuit.

March 7, 1984.

Benjamin L. Burgess, Jr., Asst. U.S. Atty., Wichita, Kan. (Jim J. Marquez, U.S. Atty., Wichita, Kan., with him on the brief), for plaintiff-appellant.

Antonio L. Ortega of Blase, Blase & Ortega, Wichita, Kan., for defendant-appellee.

Before McWILLIAMS and SEYMOUR, Circuit 'Judges, and BROWN, District Judge.[*]

McWILLIAMS, Circuit Judge.

Domingo Salinas-Calderon, the defendant, was charged in six counts with violations of 8 U.S.C. § 1324(a)(2), which prohibits the knowing transportation of an alien who is unlawfully within the United States. Prior to trial, Salinas moved to suppress all statements made by him and by six passengers in the vehicle which he was driving when he was stopped by a Kansas Highway Patrol Trooper near Howell, Kansas. After an evidentiary hearing, the district court granted the motion to suppress. The government filed a timely notice of appeal pursuant to 18 U.S.C. § 3731 and asks that the district court's suppression order be reversed.

The background facts are straight forward and not in dispute. Lt. Alvie Furbeck, a Kansas Highway Patrol Trooper, observed a blue Ford pickup truck being driven erratically on U.S. Highway 50 near Howell, Kansas, a small rural town near Dodge City, Kansas. Believing that the driver of the vehicle might be under the influence of alcohol, or perhaps just drowsy, Lt. Furbeck effected a stop of the vehicle. As Furbeck approached the truck he observed that there were persons seated in the back of the pickup under an aluminum camper shell which covered the bed of the pickup.

Salinas was the driver of the vehicle. Lt. Furbeck asked Salinas for his driver's license, but he did not respond. Upon asking a second time, it became evident that Salinas did not speak English. The woman seated next to Salinas in the cab of the pickup identified herself as Salinas' wife and said that though she spoke English, her husband did not. She stated that she had a driver's license, and that actually she had been driving most of the time. She added that her husband, who did not have a driver's license, had commenced driving only when she wanted to take care of their "fussy" baby. In response to Lt. Furbeck's question, Mrs. Salinas also said that her husband was from Mexico, and that they were on their way to Florida from Manzanola, Colorado. The officer then asked Mrs. Salinas if her husband had a "green card,"[1] and she said he did not.

Furbeck then asked Mrs. Salinas who the persons were in the back of the pickup. She indicated they were friends who had been working with them on a farm in Colorado and had asked for a ride to Florida. The officer asked her to accompany him to the rear of the truck. Six males got out of the rear of the truck, and none of them spoke English, nor did they have identification. Mrs. Salinas acted as interpreter and

---

1. A green card is the colloquial term for an alien registration receipt card. *See generally* 8 C.F.R. § 211.1(b)(1).

advised the trooper that the six passengers were also from Mexico.

Lt. Furbeck, candidly admitted at the hearing that at this point, "I didn't know exactly what I had." Hence, he decided to contact the Immigration Service which had an office at nearby Garden City, Kansas. At the scene of the stopping, Furbeck, on his police car radio, then contacted his patrol dispatcher, who in turn contacted Jim Bennett, an investigator for the Immigration and Naturalization Service in Garden City. Upon being informed of the events, Bennett suggested that Furbeck have the group follow him in their vehicle to Dodge City, and then Bennett would talk to them by telephone. Accordingly, Furbeck had Mrs. Salinas, who had a driver's license, follow him to the Sheriff's office in Dodge City. Upon arrival, the group was taken into a reception area. Bennett called and spoke in Spanish to Salinas. Immediately after Salinas identified himself on the telephone, Bennett read him his *Miranda* warnings in Spanish and Salinas indicated he understood them. Later, Bennett spoke to the six male passengers in Spanish, giving the *Miranda* warning to each. Without going into the details, all seven stated that they were illegally in the United States, with Salinas also admitting that he knew the six passengers were illegal aliens. It was on this sequence of events that Salinas was charged in six counts with transporting six illegal aliens in violation of 8 U.S.C. § 1324(a)(2).[2]

At the hearing on the defendant's motion to suppress, the district court held that Lt. Furbeck arrested the defendant and the six passengers without probable cause, thereby violating Salinas' fourth amendment rights, and that such illegality carried over and tainted the incriminating statements subsequently made to Bennett, the immigration officer. The court, therefore, suppressed the statements of the defendant and also the statements taken from the six alien passengers.

[1] As stated, the government filed its appeal within 30 days of the suppression order, as required by 18 U.S.C. § 3731. The government, however, did not file the certification required by § 3731 with the district court until after the 30-day period expired. Defendant-appellee argues the appeal should be dismissed because of the government's tardy filing of the required certification. We disagree. Such does not defeat the jurisdiction of this Court. In *United States v. Welsch,* 446 F.2d 220 (10th Cir. 1971), we specifically held that the failure to file the certificate required by § 3731 is an irregularity in perfecting an appeal which does not, however, operate to deprive us of jurisdiction.

■ Our study of the record leads us to conclude that Lt. Furbeck did have probable cause to arrest Salinas. "Probable cause exists where 'the facts and circumstances within their [the officers'] trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed by [the person to be arrested]." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949), quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The district court judge indicated at the hearing on the motion to suppress that, based on the briefs, he was prepared to hold that the facts, taken together, reached probable cause. He was dissuaded, however, from so holding by Lt. Furbeck's testimony to the effect that he was himself uncertain about what to do with the situation, and accordingly decided to contact the Immigration and Naturalization Service. In applying a subjective test to determine probable cause, the district court erred.

■ Probable cause is measured against an objective standard. *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964) (the facts and circumstances must warrant "a man of reasonable caution" in the belief that an offense has been or is being committed); *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168,

---

**2.** Salinas was also given a traffic citation for driving without a driver's license.

171, 4 L.Ed.2d 134 (1959) (the facts and circumstances must warrant "a prudent man" in believing the offense has been committed); *United States v. McCormick,* 468 F.2d 68, 73 (10th Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973) ("Probable cause must be evaluated in relation to the circumstances as they would have appeared to prudent, cautious and trained police officers"). *See also* W. La Fave, Search and Seizure, § 3.2(b) (1978). If this objective test is met, it is unnecessary that the officer hold a subjective belief that he has a basis for making the arrest. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *Klingler v. United States,* 409 F.2d 299, 304 (8th Cir.), *cert. denied,* 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States ex rel. Senk v. Brierley,* 381 F.Supp. 447 (M.D.Pa.1974), *aff'd,* 511 F.2d 1396 (3d Cir.), *cert. denied,* 423 U.S. 843, 96 S.Ct. 77, 46 L.Ed.2d 63 (1975). In *Royer,* the Supreme Court noted that "[t]he fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause...." *Royer,* 103 S.Ct. at 1329. As observed by one judge, since courts have never hesitated to overrule an officer's determination that he had probable cause to arrest, consistency suggests a court may also find probable cause despite an officer's judgment that he

did not have probable cause to arrest. *Brierley,* 381 F.Supp. at 463.

What are the objective facts by which Lt. Furbeck's actions should be tested? Appellee's counsel concedes in his brief that Lt. Furbeck's initial stopping of the car was lawful.[3] Lt. Furbeck found he could not converse with the driver of the vehicle, Salinas, because of the language barrier. From the woman who was seated beside Salinas in the cab of the pickup, Lt. Furbeck learned that Salinas was from Mexico, that he had no driver's license or green card, and that they were en route from Colorado to Florida. Further, Lt. Furbeck observed six adult males in the bed of the pickup under an aluminum camper shell. He was also unable to converse with any of these six passengers because of the language barrier. However, he learned from Mrs. Salinas that the six passengers were also from Mexico and that none had identification papers or green cards. Applying the objective probable cause test to these facts, it is our view Lt. Furbeck had probable cause to make a warrantless arrest for violation of the immigration laws at this point in time.

Lt. Furbeck's subsequent call to the local authorities of the Immigration and Naturalization Service does not defeat the existence of probable cause.[4] Although we find that probable cause existed *before* Lt. Furbeck called the Immigration Service, we note that it is well established that law

---

3. Because the state trooper acted lawfully in initially stopping the car based on his suspicion the driver was intoxicated, and not because of the driver's apparent Mexican descent, we distinguish the instant case from the unlawful stop made in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). We further find that the brief detention and investigatory questioning of the occupants was reasonable and lawful under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellee argues that the state trooper did not have the authority to detain the passengers while he inquired into federal immigration matters, and further, his question about the defendant's green card was based on a mere hunch. These arguments are without merit. A state trooper has general investigatory authority to inquire into possible immigration violations. Moreover, the trooper's question about

the green card was reasonable under the circumstances, and thus lawful. *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878–79; *United States v. Saldana,* 453 F.2d 352 (10th Cir.1972).

4. Appellee argues that Lt. Furbeck lacked any particular knowledge of the immigration laws and that his call to the Immigration Service was tantamount to a fishing expedition. We disagree. Furbeck's lack of knowledge of the immigration laws does not preclude a finding of probable cause. An officer who lacks expertise in a particular field does not necessarily mean probable cause is lacking, for lack of experience does not prevent a police officer from "sensing the obvious." *United States v. Strahan,* 674 F.2d 96, 100 (1st Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982).

enforcement officers may pool their information in order to establish probable cause. *United States v. Torres,* 663 F.2d 1019, 1022 (10th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982); *Holt v. United States,* 404 F.2d 914, 918–19 (10th Cir.1968), *cert. denied,* 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969). In sum, we hold that Lt. Furbeck had probable cause to make a warrantless arrest and the fact that Lt. Furbeck himself did not know with certainty that there was a violation of the immigration laws is not controlling.

In granting the motion to suppress, the district court relied upon *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In *Dunaway,* the Supreme Court held the police violated the fourth amendment when they seized the petitioner, without probable cause to arrest, and took him to the police station for interrogation. The case is clearly distinguishable because in *Dunaway* the police lacked probable cause, and indeed the State conceded this point. In the instant case, we find probable cause was established.

■ Appellee also argues the group should have been advised of their *Miranda* rights prior to questioning at the scene on the highway. As indicated, because of the language barrier, Lt. Furbeck did not acquire any information from Salinas. Hence, the question of whether he should have been given a *Miranda* warning at the scene of the stopping is only academic. With respect to the male occupants of the truck, Salinas does not have standing to object to any violation of their fifth amendment rights resulting from failure to give *Miranda* warnings at the highway scene. *See, e.g., United States v. Lopez,* 709 F.2d 742, 745 n. 3 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); *United States v. Penn,* 647 F.2d 876, 884 (9th Cir.1980); *United States v. Fredericks,* 586 F.2d 470, 479–81 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979). *Cf. United States v. Skolek,* 474 F.2d 582, 584–85 (10th Cir.1973). Additionally, we note that the record is unclear as to the extent to which Mrs. Sali- .

nas acted as an interpreter or volunteered the information about the passengers. Regardless of this ambiguity, it is clear the inquiry was limited to their identification and place of origin. The routineness of this inquiry demonstrates that the officer was still in a stage of investigation. The male passengers were not subjected to custodial interrogation which triggers the *Miranda* requirement. *Miranda v. Arizona,* 384 U.S. 436, 477–78, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966); *Allen v. United States,* 390 F.2d 476 (D.C.Cir.1968). *See also United States v. Chadwick,* 415 F.2d 167, 173 (10th Cir.1969); *Sablowski v. United States,* 403 F.2d 347, 349 (10th Cir.1968) (*Miranda* warnings are not required for on-the-scene questioning concerning state car registration and driver's license).

■ The statements which Salinas sought to suppress were those made by himself and his male passengers at the Sheriff's Office at Dodge City to Bennett, the immigration officer. The evidence is undisputed that Bennett gave each of these persons a *Miranda* warning in Spanish before they were interrogated. Thus, we conclude that there was no violation of Salinas' fifth amendment rights.

Judgment reversed and cause remanded with directions that the order granting Salinas' motion to suppress be vacated.