**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 11 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ONTONIEL VASQUEZ-ALVAREZ,

        Defendant-Appellant.

No. 98-6325

---

Appeal from the United States District Court
for the W. District of Oklahoma
(D.C. No. 98-CR-45-R)

---

June E. Tyhurst, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Sean Connelly, U.S. Department of Justice, Denver, Colorado, (Patrick M. Ryan, United States Attorney, W. District of Oklahoma, and Mark A. Yancey, Assistant United States Attorney, W. District of Oklahoma, with him on the brief), for Plaintiff-Appellee.

---

Before **ANDERSON**, **KELLY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## INTRODUCTION

Ontoniel Vasquez-Alvarez ("Vasquez") was arrested by an Edmond, Oklahoma, police officer. The arrest was based solely on the fact that Vasquez was an illegal alien. After Vasquez's arrest, an agent of the Immigration and Naturalization Service ("INS") discovered that Vasquez had a felony record and had previously been deported. Shortly thereafter, a federal grand jury handed down a one-count indictment charging Vasquez with illegally reentering the United States after a deportation in violation of 8 U.S.C. § 1326.

In response to the indictment, Vasquez filed a motion to suppress his post-arrest statements, fingerprints, and identity. Vasquez claimed that 8 U.S.C. § 1252c limits the authority of state and local police officers, allowing such an officer to arrest an illegal alien only when the INS has confirmed, before the arrest, that the alien has previously been convicted of a felony and has, since that conviction, been deported or left the United States. Although the district court concluded that Vasquez's arrest "appeared" not to comport with § 1252c, it denied Vasquez's suppression motion. According to the district court, suppression was not the appropriate remedy for a violation of § 1252c.

Vasquez entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(e), preserving his right to appeal the suppression issue. On appeal, Vasquez

argues as follows: (1) his arrest did not comport with § 1252c; (2) § 1252c sets forth the only circumstances under which a state or local law enforcement official can arrest for violations of federal immigration laws; and (3) suppression is the appropriate remedy for violations of § 1252c.

This court agrees that § 1252c did not authorize Vasquez's arrest. Nevertheless, we further conclude that § 1252c does not limit or displace the preexisting general authority of state or local police officers to investigate and make arrests for violations of federal law, including immigration laws. Instead, § 1252c merely creates an additional vehicle for the enforcement of federal immigration law. This conclusion moots the remaining issues raised by Vasquez on appeal. Accordingly, this court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's denial of Vasquez's motion to suppress.

## BACKGROUND

The facts leading up to Vasquez's arrest and prosecution are uncontested. On February 12, 1998, INS Special Agent Jerry Valentine was eating dinner at a restaurant in Edmond, Oklahoma. During dinner, Valentine observed an apparent drug transaction between an Hispanic male and another individual near a white Toyota and a blue Miata in the restaurant parking lot. The next morning, Valentine telephoned Edmond Police Officer Bob Pratt and asked him to

investigate the suspicious transaction. Valentine also expressed suspicion that the Hispanic male was an illegal alien. Valentine asked Pratt to arrest the Hispanic male if Pratt came in contact with him and found that he was, in fact, in the country illegally.

Around midnight on February 13th, Pratt went to the restaurant and saw both of the cars described by Valentine. The manager of the restaurant informed Pratt that a restaurant employee owned the white Toyota. Upon questioning, the employee told Pratt that his name was Ronnie Alvarez and admitted that he was an illegal alien. In light of the request from Valentine, Pratt arrested the illegal alien and transported him to the city jail to be held for the INS. At that time, Pratt did not know that the illegal alien had a history of prior criminal convictions and deportations.

The next morning, Valentine went to the Edmond Police Department and interviewed the alien. The alien continued to identify himself as Ronnie Alvarez. He again acknowledged that he was in the country illegally, but claimed that he had never been deported before. Sometime after this interview, a computer check revealed Vasquez's true name and that he had a felony record and a history of deportations. With this information in hand, Valentine again interviewed

Vasquez. During this second interview, Vasquez admitted his true name,[1] as well as his Mexican citizenship, three prior deportations from the United States, and two prior state felony convictions.

## ANALYSIS

Section 1252c authorizes state and local law-enforcement officers to arrest illegal aliens if all of the following three conditions are met: (1) the arrest is permitted by state and local law; (2) the alien was deported or left the United States after a previous felony conviction; and (3) prior to arrest, the officer obtains "appropriate confirmation" of the alien's "status" from the INS.[2] Vasquez

---

[1]At the time of his guilty plea, Vasquez informed the court that although he was known by the INS as Ontoniel Vasquez-Alvarez, his real name was Leonel Adan Hernandez-Reyes. Nevertheless, the charges were filed against the defendant under his alias and the parties on appeal continue to refer to him as Vasquez. Accordingly, this court will do likewise.

[2]In relevant part, § 1252c provides as follows:
   Notwithstanding any other provision of law, to the extent permitted by relevant State and local law, State and local law enforcement officials are authorized to arrest and detain an individual who–
      (1) is an alien illegally present in the United States; and
      (2) has previously been convicted of a felony in the United States and deported or left the United States after such conviction,
but only after the state or local law enforcement officials obtain appropriate confirmation from the [INS] of the status of such individual and only for such period of time as may be required for the [INS] to take the individual into Federal custody for purposes of deporting or removing the alien from the United States.

asserts that his arrest by Pratt was not authorized by § 1252c because Pratt did not know Vasquez was a prior deportee with a criminal record at the time of the arrest and had not received appropriate confirmation of Vasquez's status from the INS.

The United States concedes that § 1252c did not authorize Pratt to arrest Vasquez but argues that state law did so independently. In particular, the United States observes this court has long held that state and local law enforcement officers are empowered to arrest for violations of federal law, as long as such arrest is authorized by state law. *See Davida v. United States*, 422 F.2d 528, 530 (10th Cir. 1970); *cf. United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) ("infer[ring], as a matter of state law] that Illinois officers have implicit authority to make federal arrests"); *United States v. Swarovski*, 557 F.2d 40, 43-49 (2[d] Cir. 1977) (noting generally that there is no overarching federal impediment to arrests by state officers for violations of federal law). In fact, this court has held that state law-enforcement officers have the general authority to investigate and make arrests for violations of federal immigration laws. *See United States v. Salinas-Calderon*, 728 F.2d 1298, 1301-02 & n.3 (10th Cir. 1984); *see also Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir. 1983). Furthermore, Vasquez concedes that Oklahoma law allows local law-enforcement officials to make arrests for violations of federal law, including immigration laws. *See generally* 11 Okla. Op.

Att'y Gen. 345, 1997 WL 37653 (1979) (noting that "any peace officer within the State who observes an offense against the law of the United States committed within his presence has the present ability to arrest and detain an individual for that violation"). According to the United States, the passage of § 1252c did not affect this preexisting authority on the part of state and local officers.

In response, Vasquez argues that all arrests not authorized by § 1252c are prohibited by it. In particular, Vasquez argues that the passage of § 1252d displaced existing federal and state authority for local law enforcement officers to arrest for immigration violations. According to Vasquez, Congressional intent to preempt contrary state law is apparent from both the express terms and design of § 1252c. These contentions are the appropriate starting point for this court's analysis.

Congress' power to preempt state law arises from the Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl.2. Congressional intent is paramount in preemption analysis. *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998). Preemption may be either (1) expressed or (2) implied from a statute's structure and purpose. *See Jones v. Rath Packing*

*Co.*, 430 U.S. 519, 525 (1977).[3]  Nevertheless, "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  Accordingly, in the absence of express preemptive language, federal courts should be "reluctant to infer pre-emption."  *Building & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993).  With these principles in mind, this court proceeds to the question of whether Congress intended § 1252c to preempt preexisting state law empowering state and local officers to arrest for violations of federal immigration laws.

Vasquez first contends that § 1252c expressly preempts state law.  According to Vasquez, that express preemption is contained in the first clause of § 1252c–"[n]otwithstanding any other provision of law"–which evinces Congressional intent to preempt **any** law, federal or state, "in conflict with section 1252c."  When considered in context with the remainder of the

_____

[3]In addition to express preemption, the Supreme Court has recognized two types of implied preemption: (1) field preemption, where the federal regulatory scheme is so pervasive as to create the inference that Congress meant to leave no room for the states to supplement it; and (2) conflict preemption, where compliance with both state and federal law is impossible or state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *See Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (plurality opinion); *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996); *see also Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F. 3d 480, 486 (10th Cir. 1998).

introductory portion of § 1252c, the cited clause cannot reasonably be read as an express preemption of preexisting state law. *See Gade*, 505 U.S. at 2386 (plurality opinion) (noting that courts should be hesitant to find express preemption from "negative implications" of a statute's text). Instead, the statute's introductory language simply mandates that the authority newly granted state and local officers in § 1252c is to be given effect despite any contrary preexisting **federal** limitations.

The propriety of such a reading becomes readily apparent when the first two clauses of § 1252c are considered in conjunction: "Notwithstanding any other provision of law, to the extent permitted by relevant State and local law, State and local law enforcement officials are authorized to arrest and detain an individual who . . . ." It is clear from the second quoted clause–"to the extent permitted by state and local law"–that Congress did not intend to preempt state and local law when it granted authority to arrest illegal aliens to state and local law enforcement officers. Indeed, the exercise of that power is specifically made dependent on state and local authorization. The second clause of the introductory language expressly negates any intent to preempt state-law limitations on state or local authority to arrest, and strongly suggests an intent to rely solely on state-law authorization to arrest, rather than to broaden or augment such authorization. It is implausible to read any preemptive intent into the immediately preceding clause.

Accordingly, the only sensible reading of the notwithstanding-any-other-provision-of-law clause is that it was inserted to ensure that other **federal** laws not be construed to restrict the authority granted in § 1252c.

This reading of § 1252c is consistent with the statute's limited legislative history. Section 1252c originated in the House of Representatives as a floor amendment to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 142 Cong. Rec. 4619 (comments of Rep. Doolittle) (offering amend. no. 7 to H.R. 2703); Pub. L. No. 104-132, § 439, 110 Stat. 1214, 1276 (1996). The legislative history of § 1252c comprises only the floor debate on the amendment which took place in the House of Representatives. During that debate, Representative Doolittle, the sponsor of the amendment, described the purpose of § 1252c as follows:

> With such a threat to our public safety posed by criminal aliens, one would think that we would give law enforcement all the tools it needs to remove these criminals from our streets, but unfortunately just the opposite is true. In fact, the Federal Government has tied the hands of our State and local law enforcement officials by actually prohibiting them from doing their job of protecting public safety. I was dismayed to learn that the current Federal law prohibits State and local law enforcement officials from arresting and detaining criminal aliens whom they encountered through their routine duties. In fact, a low re-entry into the United States by deported aliens was considered a felony. Our State and local law enforcement officers are only permitted to release the felon and contact the INS with the details of the incident.
> Mr. Chairman, current Federal law in this area places our communities at risk and has led me to offer this amendment to H.R.

2703, an amendment I feel will help put some sense back into our laws dealing with the re-entry of criminal aliens into this country.

My amendment would also permit State and local law enforcement officials to assist the INS by granting them the authority in their normal course of duty to arrest and detain criminal aliens until the INS can properly take them into Federal custody.

With my amendment, law enforcement officials would no longer be required to release known dangerous felons back into our communities. Instead, this amendment would give those with the responsibility of protecting our public safety the ability to take a known criminal alien off our streets and put him behind bars.

. . . .

My amendment is supported by our local law enforcement because they know that fighting illegal immigration can no longer be left solely to Federal agencies. Let us untie the hands of those we ask to protect us and include my amendment in H.R. 2703 today.

142 Cong. Rec. 4619 (1996) (comments of Rep. Doolittle). As the comments of

Representative Doolittle make clear, the purpose of § 1252c was to displace a

perceived federal limitation on the ability of state and local officers to arrest

aliens in the United States in violation of Federal immigration laws.[4] This

legislative history does not contain the slightest indication that Congress intended

---

[4]Unfortunately, during the floor debate on § 1252c, Representative Doolittle did not identify which "current Federal law" prohibited "State and local law enforcement officials from arresting and detaining criminal aliens." Neither the United States nor Vasquez has identified any such preexisting law. Furthermore, this court has not been able to identify any pre-§ 1252c limitations on the powers of state and local officers to enforce federal law. In fact, as set out above, this court has held that state law-enforcement officers have the general authority to investigate and make arrests for criminal violations of federal immigration laws. *See United States v. Salinas-Calderon*, 728 F.2d 1298, 1301-02 (10th Cir. 1984); *see also Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir. 1983).

to displace any preexisting enforcement powers already in the hands of state and local officers.[5] Accordingly, neither the text of the statute nor its legislative history support Vasquez's claim that § 1252c expressly preempts state law.

In the alternative, Vasquez makes a bald claim that the "design" of § 1252c demonstrates Congress intended to subject state and local police officers to only one set of procedures, namely those procedures set forth in § 1252c, when considering the arrest of criminal illegal aliens. In light of that assertion, Vasquez further contends that "allowing state police officers to determine under state law whether to investigate and arrest someone as an illegal alien 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [C]ongress' in enacting [s]ection 1252c." Appellant Brief at 15 (citing *Gade*, 505 U.S. at 98 (plurality opinion)).

This court finds no federal preemption of state law implicit in the design of § 1252c. As noted by the United States, Vasquez's argument in favor of implied preemption is based solely on the maxim of statutory construction *expressio unius exclusio alterius* (expression of one thing is the exclusion of another). That is to say, when Congress granted arrest power to state and local police officers in

---

[5]Because § 1252c was not passed as a committee bill, but rather as a floor amendment to the AEDPA, floor debate is more indicative of legislative intent than it otherwise would be. *See Garrett v. Hawk*, 127 F.3d 1263, 1265 n.2 (10th Cir. 1997). This is especially true because Representative Doolittle sponsored the amendment and his statements regarding its purpose were uncontested. *See id.*

certain circumstances, it impliedly precluded the exercise of that power in all other circumstances. Vasquez's *expressio unius* argument admittedly has "some force." *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 259 (1994). Nevertheless, the maxim, like other canons of statutory construction, is not conclusive. *See id.* at 257-64 (analyzing section of statute mandating that certain provisions apply prospectively only and declining to draw negative inference that Congress intended remainder of statute to apply retroactively); *Dow Chem. Co. v. United States*, 476 U.S. 227, 233-34 (1986) (refusing to construe a limited grant of enforcement authority to the Environmental Protection Agency as an implicit negation of other sources of authority). We conclude that the canon is overcome here by § 1252c's legislative history and by subsequent Congressional enactments providing additional nonexclusive sources of authority for state and local officers to enforce federal immigration laws.

As discussed at length above, § 1252c's legislative history demonstrates that the purpose of the provision was to eliminate perceived federal limitations which, according to Representative Doolittle, "tied the hands of our State and local law enforcement officials." 142 Cong. Rec. 4619 (1996). In fact, Representative Doolittle indicated that he was "dismayed to learn that the current Federal law prohibits State and local law enforcement officials from arresting and detaining criminal aliens whom they encountered through their routine duties."

*Id.* There is simply no indication whatsoever in the legislative history to § 1252c that Congress intended to displace preexisting state or local authority to arrest individuals violating federal immigration laws.

In addition to this compelling legislative history, we note that in the months following the enactment of § 1252c, Congress passed a series of provisions designed to encourage cooperation between the federal government and the states in the enforcement of federal immigration laws. For instance, Congress specifically empowered the Attorney General and the INS Commissioner to contract with state and local agencies for assistance in enforcing immigration laws and incarcerating illegal aliens. *See* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, §§ 133, 371(1) & (2), 110 Stat. 3009, 3009-563, 3009-647 (1996) (codified at 8 U.S.C. §§ 1357(g)(1), 1103(a)(9) & (c)). Significantly, however, Congress provided that a formal agreement is not necessary for state and local officers "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 133, 110 Stat. at 3009-564 (codified at 8 U.S.C. § 1357(g)(10)(b)). This collection of statutory provisions evinces a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws. Viewed against this backdrop, Vasquez's claim that allowing state and local officers to arrest illegal aliens pursuant to

preexisting state or local authority would impede the accomplishment of Congress' purposes and objectives in enacting § 1252c is particularly unconvincing.

Both the plain language and legislative history of § 1252c reflect that Congress intended the provision to displace perceived Federal limitations on the authority of state and local officers to arrest "criminal illegal aliens." Nevertheless, as noted above, neither of the parties have identified, and this court has not found, any such extant federal limitation on the authority of state and local officers. *See supra* note four. Accordingly, it might be argued that this court's interpretation of § 1252c leaves the provision with no practical effect. That reason standing alone is not, however, sufficient for this court to manufacture a purpose for § 1252c by interpreting it to preempt state law. Such an approach would both contradict the plain language of § 1252c and give the statute an interpretation and effect that Congress clearly did not intend.

The judgment of the district court denying Vasquez's motion to suppress is hereby **AFFIRMED**.