**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOSE DE JESUS SANTANA-GARCIA
and GONZALO ALONSO
RUIZ-TOVAR,

    Defendants-Appellees.

No. 00-4087

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 99-CR-485-W)

Michael P. Kennedy, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Stephen R. McCaughey, Salt Lake City, Utah, for Defendant-Appellee Jose de Jesus Santana-Garcia.

G. Fred Metos, Salt Lake City, Utah, for Defendant-Appellee Gonzalo Alonso Ruiz-Tovar.

Before **BALDOCK**, **McWILLIAMS**, and **ANDERSON**, Circuit Judges.

**BALDOCK**, Circuit Judge.

After a traffic stop of Defendants Jose de Jesus Santana-Garcia and Gonzalo Alonso Ruiz-Tovar, a Utah State Trooper uncovered drugs during a search of their vehicle.  A federal grand jury charged Defendants in a three-count indictment with (1) possessing 500 or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1); (2) possessing 500 or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1); and (3) eluding examination and inspection by immigration officials in violation of 8 U.S.C. § 1325(a)(2).  Defendants subsequently moved to suppress physical evidence of the drugs.  The district court suppressed the evidence, holding that the scope of Defendants' detention exceeded permissible bounds due to the trooper's lack of objectively reasonable suspicion of criminal activity.  That illegal detention, according to the district court, tainted Defendants' subsequent consent to search their vehicle.  The Government appeals.  Our jurisdiction arises under 18 U.S.C. § 3731.  We reverse.[1]

## I.

At approximately 7:02 a.m. on August 13, 1999, Utah State Trooper Korey Wright observed a silver Ford Crown Victoria with Oregon license plates coast through a stop

---

[1] The standard for reviewing a district court's grant of a motion to suppress is well established.  We accept the court's findings of historical fact absent clear error. United States v. Olguin-Rivera, 168 F.3d 1203, 1204 (10th Cir. 1999).  The court's ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.  United States v. Browning, 252 F.3d 1153, 1157 (10th Cir. 2001).

sign at the milepost 222 northbound exit of I-15 in Juab County, Utah. Trooper Wright activated his lights. The vehicle pulled into a Texaco Tri-Mart near the exit and stopped. Trooper Wright informed the driver of the vehicle, Defendant Ruiz-Tovar, the reason for the stop and requested his license. Defendant Ruiz-Tovar indicated he did not speak English. The vehicle's passenger, Defendant Santana-Garcia, spoke limited English and informed Trooper Wright that Defendant Ruiz-Tovar did not have a driver's license. Defendant Ruiz-Tovar produced a Mexican voter card for identification. Meanwhile, Defendant Santana-Garcia handed Trooper Wright an Oregon driver's license. During this exchange, Trooper Wright observed the presence of two air fresheners near the front passenger's side of the vehicle.

At approximately 7:05 a.m., Trooper Wright returned to his patrol car to request the assistance of Spanish-speaking Trooper Nathan Lindsey. He also requested a computer check on Defendant Santana-Garcia's driver's license and the vehicle's license plate. Dispatch reported that Defendant Santana-Garcia's driver's license was valid and that an Omar Garcia-Garcia was the registered owner of the vehicle. The vehicle was not listed as stolen and Defendants had no outstanding warrants against them.

While awaiting Trooper Lindsey's arrival, Trooper Wright returned to Defendants' vehicle around 7:07 a.m. Trooper Wright asked Defendants, who were standing outside the vehicle, about the vehicle's owner. Defendant Santana-Garcia explained that he had borrowed the vehicle from a "friend." Next, Trooper Wright inquired about Defendants'

3

travel plans. At one point during the conversation, Defendant Santana-Garcia appeared to indicate they were traveling from Mexico to Colorado. This response prompted Trooper Wright to ask Defendants if they were "legal." Both Defendants stated they were not legal.[2] Trooper Wright next requested the vehicle's registration. Defendant Santana-Garcia handed Trooper Wright the registration, which listed Omar Garcia-Garcia as the vehicle's owner. Trooper Wright next asked for proof of insurance. Defendant Santana-Garcia indicated he knew nothing about the vehicle's insurance.

At approximately 7:16 a.m., Trooper Lindsey arrived on the scene. After briefly questioning Defendants about their travel plans,[3] Trooper Lindsey asked them if they had drugs in the vehicle. Both Defendants stated no. Trooper Lindsey then asked if he and

---

[2] The district court made the following findings regarding Defendants' admission of their illegal status:

> Neither Trooper Wright nor the defendants appeared to fully understand the conversation as a result of the language barrier. During the conversation, Trooper Wright asked "where are you coming from? Are you coming from California?" Santana-Garcia responded with a question , "From?" Trooper Wright said "yeah from," to which Santana-Garcia stated "Mexico." Trooper Wright then questioned defendants about whether they had been in Mexico and whether they were "legal." Defendants both responded that they had been in Mexico and were not legal.

Aplt's App. Vol. I, at 103 (internal record citations omitted) (emphasis added). The videotape of the encounter, admitted into evidence at the suppression hearing without objection, plainly shows this exchange.

[3] Defendants explained to Trooper Lindsey that they began their trip in Oregon, spent the night in Ogden, Utah, and were traveling to Colorado, but had missed their exit and turned around on the interstate shortly before the stop.

4

Trooper Wright could look in the vehicle. The Defendants' agreed. On the passenger's side of the vehicle near an air freshener, Trooper Wright observed a partially open glove box. Behind the glove box, Trooper Wright located a duct-taped package which he believed contained drugs. The troopers placed both Defendants under arrest and read them their Miranda rights. Continuing the search, Trooper Wright located a second duct-taped package behind the dashboard's radio, also near an air freshener. The two packages tested positive for cocaine and methamphetamine respectively.

## II.

Following a suppression hearing at which Troopers Wright and Lindsey testified, the district court granted Defendants' motion to suppress in a thorough written order. The court first concluded Defendants had no standing to challenge the search of the vehicle because they did not establish they had lawful possession of the vehicle at the time of the search.[4] The district court, however, recognized that Defendants had standing to object

---

[4] Defendants have never challenged the lawfulness of their initial stop. As to Defendants' standing to challenge the vehicle's search, the district court reasoned:

> In the present case, the dialogue regarding defendants' possession of the vehicle was brief and recorded entirely on video. It consisted of Trooper Wright's question, "whose car?" to which Santana-Garcia simply replied, "my friend's." This court is of the opinion that Santana-Garcia's brief reply is not the equivalent of stating that he "gained possession from the owner or someone with the authority to grant possession." United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990). As for defendant Ruiz-Tovar, he did not claim any interest in the vehicle, and claimed only to be a passenger getting a ride from Idaho to Colorado. A passenger who has neither a

(continued...)

5

to their detention. If Defendants' detention was illegal, as a general rule any evidence obtained as a result of their detention must be excluded as fruit of the poisonous tree. See United States v. Villa-Chaparro, 115 F.3d 797, 800 n.1 (10th Cir. 1997).

In determining the legality of Defendants' detention, the court relied solely on factors which Trooper Wright testified he considered to establish reasonable suspicion. These factors were (1) the vehicle's northbound travel on I-15 beyond the Colorado exit; (2) the vehicle's "lived-in" appearance; (3) the absence of visible luggage inside the vehicle's passenger compartment; (4) the presence of two air fresheners inside the vehicle; (5) the vehicle's third-party registration; and (6) Defendants' "closed" demeanor. Analyzing each of these factors, the district court concluded that Trooper Wright could not have formed the requisite reasonable suspicion of criminal activity to justify Defendants' continuing detention beyond the purpose for the initial stop. The court further concluded that Defendants' illegal detention tainted their subsequent consent to search the vehicle.

---

[4](...continued)
possessory nor a property interest in a vehicle does not have standing to challenge a search or seizure of that vehicle. United States v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995). Accordingly, the court concludes that both defendants have failed to establish an expectation of privacy in the vehicle sufficient to allow them to contest its search.

Aplt's App. Vol. I, at 107 (internal record citations omitted). Defendants do not contest on appeal the district court's holding that they lacked standing to challenge the search of the vehicle.

6

On appeal, the Government asserts that the district court erroneously failed to consider other factors which were known to Trooper Wright, but which he apparently did not rely on to detain Defendants. These factors include (1) Defendants' failure to provide proof of insurance; (2) Defendants' admission of their illegal immigration status; (3) Defendant Santana-Garcia's inability to provide the location of their destination in Colorado; and (4) Defendant Ruiz-Tovar's lack of a driver's license. According to the Government, all the factors within Trooper Wright's awareness considered in their entirety were adequate to justify Defendant's continuing detention.[5] Defendants counter with the proposition that in evaluating the reasonableness of a detention, the law does not permit a court to analyze factors which a law enforcement officer is aware of but does not expressly consider as a basis for detention.

We conclude that the district court erred in applying a subjective test to the legality of Defendants' detention. Because Trooper Wright had probable cause to arrest Defendants for violations of state traffic and federal immigration law, we conclude their detention beyond the initial purpose of the stop was reasonable, and lawful. Accordingly, we need not decide whether the totality of the circumstances justified Defendants' continuing detention on the basis of reasonable suspicion.

---

[5] The Government did not vigorously present these additional factors to the district court until a motion to reconsider the court's grant of Defendants' motion to suppress–much too late for effective advocacy.

III.

We measure probable cause against an objective standard and evaluate it in relation to the circumstances as they would appear to a prudent, cautious and trained police officer. The subjective belief of an individual officer as to whether probable cause existed for detaining a criminal suspect is not dispositive. United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999). That an officer did not believe probable cause existed to detain a suspect does not preclude the Government from justifying the suspect's detention by establishing probable cause. See Florida v. Royer, 460 U.S. 491, 507 (1983) (plurality) ("The fact that the officers did not believe there was probable cause . . . would not foreclose the State from justifying Royer's custody by proving probable cause.")

Trooper Wright learned at the outset of the encounter that the driver of the vehicle, Defendant Ruiz-Tovar, did not possess a valid driver's license. Under Utah law, operating a vehicle without a valid driver's license is a Class C misdemeanor. Utah Code Ann. § 53-2-202. Utah law authorizes arrest for the commission of a Class C misdemeanor. Id. § 77-7-2. See United States v. Lugo, 170 F.3d 996, 1003 (10th Cir. 1999). Thus, probable cause to arrest Defendant Ruiz-Tovar arose seconds into the stop.

Trooper Wright, however, did not arrest Defendant Ruiz-Tovar at that point.[6]

---

[6] If Trooper Wright had made a custodial arrest of Defendant Ruiz-Tovar at that point, the trooper could have lawfully searched the passenger compartment of the vehicle as a contemporaneous incident of that arrest. See Knowles v. Iowa, 525 U.S. 113, 118 (1998) (citing New York v. Belton, 453 U.S. 454, 460 (1981)).

Rather, because Defendant Ruiz-Tovar did not appear to speak English, and Defendant Santana-Garcia appeared to speak only limited English, Trooper Wright radioed for the assistance of Spanish-speaking Trooper Lindsey. While awaiting Trooper Lindsey's arrival, Trooper Wright, after verifying Defendant Santana Garcia's identity and running the vehicle's license plate, inquired about the vehicle's owner and about Defendants' travel plans. This questioning occurred within about five minutes of the initial stop and was plainly permissible. "Questions about travel plans are routine and may be asked as a matter of course without exceeding the proper scope of a traffic stop." United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000). Moreover, because neither Defendant was listed as the registered owner of the vehicle and had no proof of authority to operate the vehicle, Trooper Wright was authorized to inquire about the vehicle's ownership. See United States v. Galindo-Gonzales, 142 F.3d 1217, 1223 (10th Cir. 1998) ("[A] defining characteristic of our traffic stop jurisprudence is that the defendant's lack of . . . indicia of proof to lawfully operate and possess the vehicle in question gives rise to objectively reasonable suspicion that the vehicle may be stolen.") (internal quotations, brackets, and ellipses omitted).

During the exchange, Defendants at one point indicated they were coming from Mexico. This prompted Trooper Wright to ask Defendants whether they were "legal." Defendant Santana-Garcia appeared to understand the trooper's inquiry, shook his head, and answered "no." Defendant Ruiz-Tovar also appeared to understand and responded

9

in a like manner. At this point, Trooper Wright, regardless of his subjective belief that he had no authority to arrest Defendants, had probable cause to arrest both Defendants for suspected violation of federal immigration law.

We noted just recently that state law enforcement officers within the Tenth Circuit "have the general authority to investigate and make arrests for violations of federal immigration laws," and that federal law as currently written does nothing "to displace . . . state or local authority to arrest individuals violating federal immigration laws." United States v. Vasquez-Alvarez, 176 F.3d 1294, 1296, 1299 n.4, 1300 (10th Cir. 1999). Rather, we observed that federal law "evinces a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws." Id. at 1300.

Fifteen years earlier in United States v. Salinas-Calderon, 728 F.2d 1298, 1301-02 & n.3 (10th Cir. 1984), we likewise noted state law enforcement officers' "general investigatory authority to inquire into possible immigration violations." In Salinas-Calderon, we specifically held that a Kansas state trooper had probable cause to make a warrantless arrest of an undocumented alien, "and the fact that [the trooper] did not know with certainty that there was a violation of the immigration laws is not controlling." Id. at 1302; see also id. (an arresting officer need not "hold a subjective belief that he has a basis for making the arrest").

Defendants' argument that Utah state law did not authorize Trooper Wright

10

to detain them for suspected violation of federal immigration law misses the mark. We have never held that before a state law enforcement officer may arrest a suspect for violating federal immigration law, state law must <u>affirmatively</u> authorize the officer to do so. <u>But see</u> <u>Gonzales v. City of Peoria</u>, 722 F.2d 468, 475 (9th Cir. 1983) (suggesting state law must affirmatively grant local authorities the power to arrest for a federal immigration law violation). Instead, relying on <u>Salinas-Calderon</u>, we inferred in <u>Vasquez-Alvarez</u>, that state and local police officers had implicit authority within their respective jurisdictions "to investigate and make arrests for violations of federal law, including immigration laws." <u>Id.</u>at 1295;[7] <u>see also</u> <u>United States v. Janik</u>, 723 F.2d 537, 548 (7th .Cir. 1983) (recognizing state law enforcement officers' implicit authority to arrest suspects for federal offenses); <u>United States v. Bowdach</u>, 561 F.2d 1160, 1167-68 (5th Cir. 1977) (interpreting 18 U.S.C. § 3041 to empower state law enforcement officers to arrest suspects for federal offenses). This, of course, presumes no state or local law to the contrary. <u>See</u> Jay T. Jorgensen, <u>The Practical Power of State and Local Governments to Enforce Federal Immigration Laws</u> 1997 B.Y.U.L. Rev. 899, 910 n.65.[8]

---

[7] Unnecessary to our decision in <u>Vasquez-Alvarez</u>, but nonetheless noteworthy, was Defendant's acknowledgment that applicable state law specifically authorized local law enforcement officials to make arrests for violations of federal law. 176 F.3d at 1296-97 (citing 11 Okla. Op. Att'y Gen. 345 (1997)).

[8] In any event, we read the expansive language of Utah Code Ann. § 77-7-2 to empower Utah state troopers to make arrests for suspected violations of federal law, at least until the Utah state courts tell us otherwise. Utah law authorizes a state law enforcement officer to make a warrantless arrest for "any public offense," where the

(continued...)

11

Because probable cause to arrest Defendants for violations of state and federal law existed at the time of their consent to search the vehicle, Defendants' claim that they were illegally detained at the time of their consent necessarily fails. Accordingly the district court's order granting Defendants' motion to suppress on the basis of an illegal detention is reversed. This cause is remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

[8](...continued)
offense is committed or attempted in the officer's presence, or where the officer has reasonable cause to believe the suspect committed a public offense and may be a flight risk. Id. Section 77-7-2 reads in its entirety:

A peace officer may make an arrest under authority of a warrant or may, without a warrant, arrest a person:
(1) for any public offense committed or attempted in the presence of any peace officer; "presence" includes all of the physical senses or any device that enhances the acuity, sensitivity, or range of any physical sense, or records the observations of any of the physical senses;
(2) when he has reasonable cause to believe a felony or a class A misdemeanor has been committed and has reasonable cause to believe that the person arrested has committed it;
(3) when he has reasonable cause to believe the person has committed a public offense, and there is reasonable cause for believing the person may:
(a) flee or conceal himself to avoid arrest;
(b) destroy or conceal evidence of the commission of the offense; or
(c) injure another person or damage property belonging to another person.

12