**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| OSCAR MARTINEZ-MEDINA and LADISLAO MARTINEZ-QUINTANA, <br><br> Petitioners, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 06-75778 <br><br> Agency Nos.     A078-739-480 <br>               A078-739-481 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 3, 2010
Portland, Oregon

Before: KLEINFELD, BEA, and IKUTA, Circuit Judges.

Ladislao Martinez-Quintana and his son Oscar Martinez-Medina

("Petitioners") petition for review of the Board of Immigration Appeals's ("BIA")

order that denied Petitioners' motion to suppress evidence, found Petitioners

removable, and granted Petitioners' applications for voluntary departure.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Petitioners contend the BIA erred when it denied their motion to suppress evidence because the evidence was obtained as the result of an egregious violation of their Fourth Amendment rights. We deny the petition because there was no egregious violation of Petitioners' constitutional rights.

**I.**

Petitioners' car overheated and they pulled into a gas station. While they were parked at the gas station, a deputy sheriff arrived. He asked Petitioners about their travel plans. Because Ladislao did not speak English, Oscar translated. The deputy sheriff asked Petitioners for their identification, which they showed to him. Then, he asked Petitioners if they had green cards, to which they answered no. The Immigration Judge ("IJ") found all parties understood the question to mean: Are you legally present in the United States? This finding is supported by substantial evidence. The deputy sheriff told Petitioners that they could not leave and that he was going to call "Immigration." Up to two hours passed before an INS agent arrived. When he arrived, he asked Petitioners if they possessed immigration documents that allowed them to be in the United States legally; they answered no. The INS agent took Petitioners into custody, transported them to the border patrol station, and filled out I-213 forms to initiate removal proceedings. The I-213

2

forms contained Petitioners' admissions to being illegally present in the United States. The IJ denied Petitioners' motion to suppress the forms; the BIA affirmed.

## II.

Generally, the exclusionary rule does not apply in civil deportation proceedings to evidence obtained in violation of the Fourth Amendment. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984). An exception to this rule exists where the Fourth Amendment violation is egregious. *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1448 (9th Cir. 1994).

The initial encounter between the deputy sheriff and Petitioners did not violate Petitioners' Fourth Amendment rights because it was consensual. A seizure does not occur until "a reasonable person would believe that he or she is not 'free to leave'" or "would [not] feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 435–36 (1991). Neither the deputy sheriff's questions about Petitioners' travel plans, his request for their identification, nor his question about their immigration status transformed the encounter into a seizure. *See Muehler v. Mena*, 544 U.S. 93, 101 (2005); *Bostick*, 501 U.S. at 434–35. A reasonable person would have felt free to walk away from the deputy sheriff or free to refuse to answer his questions and, thus, terminate the encounter.

The encounter became a seizure when the deputy sheriff told Petitioners that they could not leave the gas station and that he was going to call "Immigration." However, we need not decide whether the seizure was supported by reasonable suspicion or probable cause. Even if probable cause was necessary to detain Petitioners until the INS agent arrived and even if the deputy sheriff lacked probable cause, the Fourth Amendment violation was not egregious.

A constitutional violation is not egregious unless "evidence is obtained by deliberate violations of the [F]ourth [A]mendment, or by conduct a reasonable officer should have known is in violation of the Constitution." *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1449 (9th Cir. 1994) (internal quotation marks and emphasis omitted). Whether a reasonable officer should have known his conduct violated the Constitution depends in part on whether the constitutional right was clearly established in the particular context at issue. *See Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008) (holding that a reasonable officer should have known his entry into a home without a warrant, consent, or exigent circumstances constituted a constitutional violation because it was committed against an "unequivocal doctrinal backdrop").

Here, there is no evidence the deputy sheriff knew his conduct violated Petitioners' Fourth Amendment rights. Further, the law was unclear as to whether

4

an alien's admission to being illegally present in the United States created probable cause to seize the alien for violating federal immigration law. Because of this lack of clarity in the law, a reasonable officer would not have known he lacked probable cause to detain Petitioners.

We have explained that "[a]lthough the lack of documentation or other admission of illegal presence may be some indication of illegal entry, it does not, without more, provide probable cause of the criminal violation of illegal entry." *Gonzalez v. City of Peoria*, 722 F.2d 468, 476–77 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). But in a subsequent opinion, the Supreme Court stated that "entering or remaining unlawfully in this country is itself a crime." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Although the Court did not elaborate on what it meant to "remain[] unlawfully in this country," a reasonable officer could have interpreted this statement to mean an alien's unlawful *presence* in this country is itself a crime.[1]

In addition, we stated in *Martinez v. Nygaard* that "[a]n individual's admission that she is an alien, coupled with her failure to produce her green card,

---

[1] In light of our holding, we need not reach the question whether or under what circumstances an alien's unlawful presence in the country is a crime.

5

provides probable cause for an arrest." 831 F.2d 822, 828 (9th Cir. 1987). Based on this case and *Lopez-Mendoza*, a reasonable officer could have concluded that an alien's illegal presence in the United States is a crime. This conclusion would have found additional support in the Tenth Circuit's decision in *United States v. Santana-Garcia*, which held that a Utah State Trooper had probable cause to arrest an alien without a warrant after the alien told the trooper he was illegally present in the United States. 264 F.3d 1188, 1193 (10th Cir. 2001). The decision in *Santana-Garcia* preceded Petitioners' November 2001 detention.

Petitioners also contend the deputy sheriff committed an egregious Fourth Amendment violation because he seized Petitioners based solely on the fact they are Hispanic. *See Gonzalez-Rivera v. INS*, 22 F.3d 1442, 1450 (9th Cir. 1994) (holding that a border patrol agent committed an egregious Fourth Amendment violation when he stopped an alien's vehicle based solely on the alien's Hispanic appearance). This contention lacks merit. The evidence here is undisputed the deputy sheriff did not stop Petitioners' vehicle at the gas station, which would have constituted a seizure. Petitioners were parked at the gas station because their car had overheated, not because the deputy sheriff had pulled them over. Nor did the deputy sheriff's initial questions to Petitioners constitute a seizure. It was not until

6

Petitioners had acknowledged their presence in the United States without legal permission that the deputy sheriff detained them.

**DENIED.**