UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald William WELKER,
Defendant-Appellant.

No. 81-1749.

United States Court of Appeals,
Tenth Circuit.

Sept. 22, 1982.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for defendant-appellant.

Robert Gay Guthrie, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before McWILLIAMS, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After trial before a United States magistrate, Ronald William Welker was convicted of obstruction of the mail, a violation of 18 U.S.C. § 1701. His conviction was affirmed by the district court, and Welker appeals. The only issue we consider is whether the evidence used to convict him was obtained as the result of an illegal search and thus should have been suppressed.[1] We conclude that the search was illegal and, therefore, we reverse the conviction.

The facts surrounding the arrest and search of Welker were presented almost

---

1. Welker also argues that under the clearly erroneous standard we should overturn the magistrate's finding that Officer Michael E. Anderson was credible in claiming that he saw Welker remove a letter from the mailbox. Reports based upon Officer Anderson's prehearing statements mentioned only that he saw Welker look into the mailbox. However, at the suppression hearing Anderson testified that he saw Welker remove something from the mailbox, and the magistrate specifically found Anderson's testimony to be credible. Welker did not challenge this finding when he appealed to the district court. He raises here for the first time the contention that the magistrate's finding was clearly erroneous. In view of our disposition of the case, we need not decide whether we should consider the issue at this stage, see United States v. Guerrero, 517 F.2d 528, 531 (10th Cir. 1975), nor whether Welker's arguments would satisfy the clearly erroneous standard, see United States v. Gagnon, 635 F.2d 766, 769 (10th Cir. 1980), cert. denied, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

entirely through the testimony of the arresting Denver police officer, Michael E. Anderson, whose testimony we accept as true.[2] While driving through a neighborhood he had patrolled for seven and one-half years, Anderson noticed Welker walking down the sidewalk. Welker aroused Anderson's attention because he was a Spanish-American in a neighborhood Anderson considered to be black. Anderson saw Welker leave the sidewalk and approach an apartment that Anderson believed was occupied by blacks. Anderson's belief about who lived in the neighborhood in general and the apartment in particular was based on his experience in patrolling the area and not on actual knowledge of who the occupants were. Anderson testified that he saw Welker remove what appeared to be a manila-colored envelope from the apartment's mailbox. Anderson then stopped his car. Peering back over his shoulder, he watched Welker leave the residence and cross the lawn to speak with a second man standing on the corner. Welker did not approach any other mailboxes, nor did he appear furtive or nervous. The time of day was about 11:20 a.m.

Officer Anderson left his car, approached the two men, and asked them for identification. The second man produced a hospital identification card; Welker had no identification. Without additional questioning, Anderson escorted the two men to his car and placed Welker under arrest.[3] Anderson then recovered the envelope from Welker's back pocket, from which it was protruding. Inside the envelope was a government check addressed to an occupant of one of the apartments.

After an investigation by postal inspectors, Welker was charged with violating 18 U.S.C. § 1701. He moved to suppress the envelope and the check, claiming that they were seized illegally. The magistrate held that the seizure of the envelope was incident to a lawful arrest based on probable cause and that the evidence was therefore admissible.[4] On these facts we hold that Officer Anderson did not have probable cause to arrest Welker, and therefore the envelope was illegally seized and the evidence should have been suppressed.

█ Police officers may perform warrantless personal searches incident to lawful arrests without violating the Fourth Amendment. *Michigan v. DeFillipo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2630, 61 L.Ed.2d 343 (1979); *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). The lawfulness of the search, however, depends upon the lawfulness of the arrest. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The validity of the warrantless arrest of Welker, and hence the validity of the recovery of the envelope, turn on whether Anderson had probable cause to believe Welker had committed a crime. *United States v. Coker,* 599 F.2d 950, 952 (10th Cir. 1979); *cf. Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (statements made during interrogation after warrantless arrest without probable cause must be suppressed).

Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [the arresting officer's] knowledge ... were sufficient to warrant a prudent man in believing that the [suspect] had committed or was commit-

---

2. We are not arrogating the power of the trial court to assess the credibility of witnesses and to resolve factual issues. *See United States v. Gagnon,* 635 F.2d 766, 769 (10th Cir. 1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Coker,* 599 F.2d 950, 951 (10th Cir. 1979).

3. The government concedes that Welker was arrested, and therefore that the probable cause standard must govern the seizure.

4. The government argued and the magistrate ruled that the envelope was in plain view. But the plain view doctrine has no application in this case. This doctrine applies to items that are outside the scope of an otherwise valid search or stop, but are discovered in plain view during the course of such a lawful search or stop. If the search or detention is invalid, that the item was in plain view will not make its seizure lawful. *See Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971).

ting an offense." *United States v. Gagnon,* 635 F.2d 766, 769 (10th Cir. 1980) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Probable cause requires more than a mere suspicion of criminal activity. *United States v. Hansen,* 652 F.2d 1374, 1388 (10th Cir. 1981).

Here, Officer Anderson's belief about the neighborhood's racial composition may have caused him to be suspicious when he saw appellant Welker remove the letter from the mailbox. However, there could have been a multitude of innocent explanations for Welker's activity. For example, Welker could recently have moved into the apartment; he could have been a guest of the apartment's occupants; he could have been a friend sent to pick up mail while the occupants were out of town. *See Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (suspect's activity, while giving rise to DEA agent's suspicions, could also be attributed to "a very large category of presumably innocent [people]"). The record indicates that Welker did not approach any other mailboxes. He did not look around furtively. After removing the envelope from the mailbox, Welker did not run away, but instead walked to the corner and began talking with his companion. All this occurred in broad daylight. Welker's behavior was as consistent with lawful retrieval of the letter as it was with theft.

Officer Anderson had the right to approach Welker and his companion and question them, *see Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–1923, ·32 L.Ed.2d 612 (1972) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), but he did not at that point have probable cause to arrest. Anderson asked Welker to produce identification. While by itself a driver's license or other identification would not have established that Welker had permission to use the mailbox, it might have aided in determining whether Welker lived in the apartment. Welker's failure to produce identification may have added to An-

derson's suspicions somewhat, but it did nothing to reduce the likelihood of an innocent explanation, nor did it provide positive additional evidence of a specific crime. *See generally Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (arrest of suspicious-looking person for refusing to comply with compulsory identification law violated Fourth Amendment because police lacked reasonable, articulable grounds for believing he had committed a crime).

In order to determine whether Welker had committed or was committing an offense, Officer Anderson needed more information. He needed to discover, or to attempt to discover, whether Welker lived in the apartment, had permission to obtain mail from the box, or had inadvertently removed mail from the wrong box. *Cf. Michigan v. Summers,* 452 U.S. 692, 700 & n. 12, 101 S.Ct. 2587, 2593 & n. 12, 69 L.Ed.2d 340 (1981) (officer may stop suspect and ask him to explain suspicious circumstances prior to arresting him); *United States v. Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) (same). Viewing the factual situation as a whole, we hold that Anderson's belief about who resided in the neighborhood and in the apartment, Welker's non-furtive retrieval of the letter, and Welker's failure to carry identification do not add up to probable cause to arrest.

Because Anderson did not have probable cause to arrest Welker, his seizure of the envelope was illegal; the fruits of such a seizure must be suppressed. *United States v. Hansen,* 652 F.2d 1374, 1390–91 (10th Cir. 1981); *United States v. Sporleder,* 635 F.2d 809, 813 (10th Cir. 1980).

REVERSED and REMANDED for further proceedings consistent herewith.