**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

                                No. 97-2238

JOSE VAZQUEZ-PULIDO,

    Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-96-210-JP)**

---

Renee L. Camacho (John J. Kelly, United States Attorney, Albuquerque, New Mexico, with her on the briefs), Special Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

R. Morgan Lyman, Mesilla Park, New Mexico, for Defendant-Appellant.

---

Before **BRORBY, HOLLOWAY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

     Mr. Jose Vazquez-Pulido appeals his jury conviction in federal district court for five drug-related offenses. He specifically appeals the district court's

denial of his motion to suppress evidence seized from him subsequent to his allegedly unlawful arrest. He also appeals the court's ruling that allowed the government to cross-examine his expert witness on mental capacity as to tests used to determine his competency to stand trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**BACKGROUND**

At roughly 9:00 a.m. on March 19, 1996, Javier Vazquez-Pulido[1] drove into the Columbus, New Mexico, United States Port of Entry from Mexico. United States Customs Service agents subsequently searched his vehicle and discovered approximately eight and a half kilograms of heroin and 329 grams of methamphetamine. Javier Vazquez-Pulido told agents the vehicle was owned by his friend. He later stated the vehicle belonged to his brother. When asked about the inconsistency, he stated the vehicle belonged to a friend and his brother. During Javier Vazquez-Pulido's detention, United States Immigration and Naturalization Inspector Rene Alvarez processed his immigration documents to determine Javier Vazquez-Pulido's date of birth, parents' names, and resident alien card number.

---

[1] We refer to the appellant as Mr. Vazquez-Pulido, and to his brother as Javier Vazquez-Pulido.

At approximately 10:00 a.m. the same day, Mr. Vazquez-Pulido walked into the Columbus Port of Entry from Mexico. He asked Inspector Alvarez for an extension of his temporary deferral of inspection card, which would allow him to enter the United States without the permanent resident alien card that he had lost. When Inspector Alvarez asked him where he was going, Mr. Vazquez-Pulido replied he was returning to California. Inspector Alvarez also asked him if he had any luggage and if he came in a vehicle. Mr. Vazquez-Pulido replied no to both questions. Inspector Alvarez thought these answers were suspicious.

Inspector Alvarez informed Mr. Vazquez-Pulido he could reapply for a new permanent resident alien card by obtaining two photos and paying $75. Mr. Vazquez-Pulido returned to Mexico to obtain the photos. Meanwhile, Inspector Alvarez used information from Mr. Vazquez-Pulido's immigration documents to complete his resident alien card application.

As Inspector Alvarez processed Mr. Vazquez-Pulido's paperwork, he recognized similarities to information he had processed earlier that morning concerning Javier Vazquez-Pulido. In particular, he noticed Mr. Vazquez-Pulido's place of birth and parents' names were identical to those of Javier Vazquez-Pulido. The first four digits of their resident alien numbers were the

same, indicating the cards probably were issued in the same area. Inspector Alvarez informed the Customs agents on Javier Vazquez-Pulido's case of the similarities. When Mr. Vazquez-Pulido returned to the Port of Entry later that morning, the Customs agents arrested him.

Mr. Vazquez-Pulido filed a pretrial motion to suppress evidence resulting from the allegedly invalid search and seizure of his vehicle and his allegedly unlawful detention at the Port of Entry. At the suppression hearing, Mr. Vazquez-Pulido also claimed evidence was seized subsequent to his unlawful arrest. The district court denied his motions to suppress, finding probable cause existed to search the vehicle, no unlawful detention occurred, and probable cause supported the arrest.

Mr. Vazquez-Pulido's counsel moved for a competency evaluation pursuant to 18 U.S.C. § 4241 to determine if Mr. Vazquez-Pulido was competent to stand trial. Dr. Juan Sosa was appointed to evaluate Mr. Vazquez-Pulido's competency to stand trial. Dr. Sosa's report to the court contained the results of psychological tests conducted on Mr. Vazquez-Pulido. The court determined Mr. Vazquez-Pulido competent to stand trial.

At trial, Mr. Vazquez-Pulido called Dr. Jorge Vargas, a psychiatrist, as an expert witness to testify as to his mental capacity to commit the crimes charged. Dr. Vargas testified that his evaluation consisted of a mental status evaluation conducted during a ninety-minute interview with Mr. Vazquez-Pulido. He also testified that he reviewed a forensic report on Mr. Vazquez-Pulido's mental functioning. Dr. Vargas testified Mr. Vazquez-Pulido suffered, *inter alia*, from depression and a psychosis, which probably existed on the day of his arrest. Based on his evaluation, Dr. Vargas concluded Mr. Vazquez-Pulido did not have the specific intent required to commit the crimes charged.

In its cross-examination of Dr. Vargas, the government inquired about tests generated during Dr. Sosa's competency examination.[2] Mr. Vazquez-Pulido repeatedly objected to this line of questioning, claiming the tests were given solely for the purpose of determining competency. The district court overruled his objections, concluding questions regarding Dr. Sosa's test results were proper so long as the government did not refer to Mr. Vazquez-Pulido's competency to

---

[2] The government questioned Dr. Vargas about the Bender Gestalt test, the Wechsler Intelligence Scale test in Spanish, the draw-a-person test, and Mr. Vazquez-Pulido's test results. The results indicated Mr. Vazquez-Pulido had average intelligence and motor skills, nervous system problems, and no major difficulties with self-perception or social adjustment.

stand trial.

Mr. Vazquez-Pulido was subsequently convicted on five drug-related charges[3] by a jury and sentenced to 262 months imprisonment. We now address his issues on appeal.

**ANALYSIS**

*Motion to Suppress*

Mr. Vazquez-Pulido argues the district court erred in denying his pretrial motion to suppress evidence resulting from his allegedly unlawful arrest.[4] He maintains his warrantless arrest was unlawful because it was not supported by probable cause. When reviewing a district court's denial of a motion to suppress,

---

[3] Mr. Vazquez-Pulido was charged with: conspiracy to possess with intent to distribute heroin and methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; importation of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(A) and 18 U.S.C. § 2; possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2; importation of methamphetamine, in violation of 21 U.S.C. § 952(a), 960(a)(1), 960(b)(1)(A) and 18 U.S.C. § 2; and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2.

[4] Evidence seized from Mr. Vazquez-Pulido as a result of his arrest and introduced at trial included a military identification card in his name, a birth certificate, and the eventual discovery of the car registration for the car containing the drugs in Mr. Vazquez-Pulido's name and in the name of Espinosa Ramirez.

we consider the evidence in the light most favorable to the government, and accept the court's findings of fact unless they are "clearly erroneous." *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir. 1992). "'The ultimate determination of reasonableness under the fourth amendment is, however, a conclusion of law that we review *de novo*.'" *Id.* (quoting *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir. 1989)).

To be lawful, a warrantless arrest must be supported by probable cause to arrest. *Id.* "Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Guerrero-Hernandez*, 95 F.3d 983, 986 (10th Cir. 1996). In the probable cause determination, we look at the totality of the circumstances of each particular case. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981). Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion. *Hansen*, 652 F.2d at 1388.

Mr. Vazquez-Pulido first claims the district court's finding that the Customs agents knew the car containing the drugs was registered in his name

when they arrested him is clearly erroneous. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994) (quotation marks and citation omitted). According to our review of the record, the district court's finding was confirmed, in part, by Javier Vazquez-Pulido's statement that the car belonged to his brother and a friend,[5] and the immigration information indicating Mr. Vazquez-Pulido and Javier Vazquez-Pulido were brothers. Based on this evidence, we conclude the district court's finding is not clearly erroneous.

Mr. Vazquez-Pulido next contends his relationship to his brother, and his arrival at the Port of Entry shortly after his brother's arrest, are insufficient facts to establish probable cause to arrest him. We agree "mere propinquity to others

---

[5] Mr. Vazquez-Pulido further contends his brother's statement was unreliable hearsay which could not provide a sufficient basis for probable cause. Even if true, the finding of probable cause to support an arrest may be based on a co-defendant's hearsay statement, in whole or part. *Clanton v. Cooper*, 129 F.3d 1147, 1155 (10th Cir. 1997) (noting the probable cause determination is made "under a 'practical, nontechnical' totality of the circumstances test" (quoting *Gates*, 462 U.S. at 230-32)). Moreover, the agents could have considered the brother's statement partly corroborated by Mr. Vazquez-Pulido's appearance at the border shortly after his brother. *See Gates*, 462 U.S. at 241 (recognizing the value of corroborating details to an informant's tip in evaluating its veracity).

independently suspected of criminal activity does not, without more, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (ruling no probable cause existed to search tavern patron without facts connecting him to illegal activity); *see also Sibron v. New York*, 392 U.S. 40, 62 (1968) (observing no probable cause existed to detain defendant who spoke to known narcotics addicts over a period of eight hours, without independent evidence of criminal activity). Nor is nearness to the place of the arrest of a co-conspirator or to the place of illegal activity sufficient to establish probable cause. *See United States v. Di Re*, 332 U.S. 581, 593 (1948) (ruling no probable cause existed to arrest defendant who merely was present during an illegal transaction that was not visibly criminal); *Anderson*, 981 F.2d at 1566 (holding no probable cause existed to arrest defendant who visited a house suspected to contain drugs, and walked by the place of arrest of alleged co-conspirators, without additional evidence of criminal activity).

However, where there are facts in addition to one's association with someone engaged in criminal activity, as in this case, we must consider whether the "totality of the circumstances" known at the time of the arrest established probable cause. *See United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984) ("In order to find probable cause based on association with persons engaging in

criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown."); *see also United States v. Ramirez*, 963 F.2d 693, 698-99 (5th Cir.) (ruling probable cause existed where defendant was not only seen in the company of drug suspects, he was seen meeting suspects while they engaged in a drug conspiracy, and his behavior was consistent with the inference he was part of the conspiracy), *cert. denied*, 506 U.S. 944 (1992).

According to the district court, the facts known to the Customs agents at the time of Mr. Vazquez-Pulido's arrest were: 1) Javier Vazquez-Pulido was arrested at the Columbus Port of Entry after drugs were found in the vehicle he was driving; 2) Javier Vazquez-Pulido told Customs agents the vehicle belonged to his brother and a friend; 3) Mr. Vazquez-Pulido arrived shortly thereafter on foot and without luggage; and 4) similarities in Mr. Vazquez-Pulido's and Javier Vazquez-Pulido's immigration records indicated they probably were brothers. In this case, the arresting officers had more than mere association between Mr. Vazquez-Pulido and Javier Vazquez-Pulido to make their probable cause determination. The agents also had evidence the brothers were traveling together in the vehicle containing the drugs, and that the vehicle was partly owned by Mr. Vazquez-Pulido. From these facts and circumstances, the arresting agents could

reasonably infer a connection among Mr. Vazquez-Pulido, his brother, and the drugs found in the car. Reviewing the evidence in the light most favorable to the government, we conclude the agents had probable cause to arrest Mr. Vazquez-Pulido. Consequently, we affirm the district court's denial of his motion to suppress.

*Cross-Examination on Competency Tests*

Mr. Vazquez-Pulido argues the district court erred when it allowed the government to cross-examine his expert witness with information from the pretrial competency report. He claims the court erred because the issues of mental competency and mental capacity to commit a crime are legally distinct. He points to the comprehensive statutory scheme for determining a defendant's competency to stand trial as evidencing Congress' intent to keep competency issues separate from trial issues. [6] *See* 18 U.S.C. §§ 4241 and 4247. He also

---

[6] The statutory scheme provides detailed pre-trial procedures for determinating whether a defendant is competent to stand trial. 18 U.S.C. § 4241. Any of the parties, or the court *sua sponte*, may motion for a hearing to determine if the defendant is mentally competent. *Id.* § 4241(a). If the court grants the motion, it may order a psychiatric or psychological examination of the defendant and require a report be filed by the examiner. *Id.* § 4241(b). The report must include all tests employed, and their results. *Id.* § 4247(c)(2), (A)(4)(A). The court then determines if the defendant is competent to stand trial, *i.e.*, is able to understand the nature and consequences of the proceedings against him or is able to assist in his defense. *Id.* § 4241(a).

contends competency tests should not be allowed at trial since but for the competency evaluation, evidence of the tests would not be before the parties. Lastly, he argues allowing competency tests to be used against a defendant at trial will chill defense counsel's willingness to move for a competency evaluation.

We review evidentiary rulings for an abuse of discretion. *United States v. Janusz*, 135 F.3d 1319, 1323 (10th Cir. 1998). However, when the issue on appeal is a claim that the district court erred in interpreting the law, we review the district court's interpretation *de novo*. *Kelley v. United States*, 69 F.3d 1503, 1506 (10th Cir. 1995), *cert. denied*, 517 U.S. 1166 (1996).

We are unwilling to adopt a *per se* rule making all test results arising from pretrial competency evaluations inadmissible at trial. We first note the statutory scheme does not forbid the use of competency tests at trial. [7] Second, psychiatric or psychological tests used to determine competency may be relevant to the

---

[7] Section 4241(f) provides: "A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged." 18 U.S.C. § 4241(f). Mr. Vazquez-Pulido, however, does not claim that the court's finding prejudiced him. Rather, he asks us to rule, as a matter of law, that all tests used to determine competency shall not be used at trial.

question of a defendant's mental capacity to commit a crime. Indeed, expert witnesses may use identical testing procedures for evaluating both the defendant's mental competency to stand trial and his mental capacity to commit the crime at issue. *See United States v. Cassidy*, 571 F.2d 534, 537 (10th Cir.), *cert. denied*, 436 U.S. 951 (1978). We see no reason why the difference in standards for determining mental competency and mental capacity [8] requires a rule making the test results of competency determinations *per se* inadmissible at trial.

We think the better approach to determining whether test results from competency determinations should be admissible at trial is to evaluate the evidence on a case-by-case basis for relevance, prejudice or confusion of the issues. *See* Fed. R. Evid. 402, 403. This approach also is consistent with our prior case law permitting testimony at trial as to evidence obtained during a competency evaluation so long as the issues are not confused. *United States v. Collins*, 491 F.2d 1050, 1053 (5th Cir.) (observing that competent evidence adduced during a competency hearing can be presented at trial so long as such

---

[8] The test for a diminished capacity defense, like that raised by Mr. Vazquez-Pulido, is the whether the defendant had the mental capacity to form the specific intent to commit the crime at issue. *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988).

-13-

evidence does not "becloud" the issue (insanity) the jury is to decide), [9] *cert.*

*denied*, 419 U.S. 857 (1974).

We also do not find compelling that, as Mr. Vazquez-Pulido suggests, competency tests should be inadmissible at trial since the tests would not be available to the parties but for the competency evaluation. As we have already recognized, identical testing procedures may be used by experts to evaluate both the defendant's mental competency to stand trial and his mental capacity to commit a crime. Consequently, the tests used to determine competency may be available to the parties regardless of the compelled competency evaluation. Furthermore, the government can compel the defendant to undergo psychiatric or psychological examination when the defendant raises the issue of insanity. 18 U.S.C. § 4242(a). Information from that examination may be used against the defendant with respect to his mental condition even though the psychological or psychiatric examination is compelled. Fed. R. Crim. P. 12.2(c). We therefore do not find this argument persuasive enough to justify a *per se* rule making all test

---

[9] The relevant statute in *Collins* was 18 U.S.C. § 4244, the predecessor to 18 U.S.C. § 4241. Section 4244 precluded not only the court's order finding the defendant competent to stand trial from being admissible at trial, but also any statement made by the accused from being admissible on the issue of guilt. 18 U.S.C. § 4244 (1982). The difference in these two statutes, however, has no impact on the point made here.

results from pretrial competency examinations inadmissible.

We recognize defense counsel may face a dilemma in deciding whether to move for a competency evaluation since the results of competency tests can be used to rebut a mental defense at trial. However, this dilemma does not require that all test results from the competency determination be inadmissible at trial. The rules of evidence provide sufficient opportunity for defense counsel to challenge the admissibility of such evidence. For example, defense counsel can object on the basis of relevancy under Fed. R. Evid. 402, or object, under Fed. R. Evid. 403, that the admission of competency evidence confuses the issues of mental competency to stand trial and mental capacity to commit a crime. The dilemma may also be reduced by vigorous cross- or redirect examination distinguishing the purposes for which the tests were given. Moreover, there are additional safeguards available to ensure a mentally incompetent defendant does not stand trial. For example, the prosecutor or the court *sua sponte* may move for a competency hearing if defense counsel fails to do so. *See* 18 U.S.C. § 4241(a).

For the above reasons, we decline to hold as a matter of law that all contents and results of psychological tests used to determine competency are inadmissible to rebut a mental defense. Mr. Vazquez-Pulido failed to appeal any

specific evidentiary objections made to the government's questioning. We find

no error in the district court's decision to permit the government's questioning of

Dr. Vargas regarding tests used to determine Mr. Vazquez-Pulido's competency.


       Accordingly, we   **AFFIRM.**