**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JOE WAYNE SPARKS,

    Defendant - Appellee.

No. 01-7097

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CR-35-S)**

Jonathan L. Marcus, Attorney, Department of Justice, Washington, D.C. (Sheldon J. Sperling, United States Attorney, and D. Michael Littlefield, Assistant United States Attorney, Eastern District of Oklahoma, with him on the briefs), for the appellant.

Donn F. Baker, Baker & Baker, Tahlequah, Oklahoma, for the appellee.

Before **SEYMOUR**, Circuit Judge, **BALDOCK**, Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

**BRISCOE**, Circuit Judge.

The United States appeals from the district court's order granting defendant Joe

Sparks' motion to suppress evidence obtained during searches of his vehicle and

residence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the district court's suppression order, and remand for further proceedings.

I.

On the morning of June 2, 1999, dispatchers at the Sallisaw, Oklahoma, Police Department received a 911 call from a resident who reported seeing a plastic bag containing a white powdery substance on the side of a road just outside the city limits of Sallisaw. The caller had not touched the bag. Detective John Owens went to the reported location and found a large plastic bag containing "a large amount of a white powder . . . wrapped in Saran Wrap." Aplt. App. at 50. According to Owens, the bag was on the edge of the road beside a tinhorn and was in plain view as he approached. Owens took the bag to the Sequoyah County Sheriff's Office, where he performed a field test and concluded that it contained approximately one pound of methamphetamine. Based upon the field test results, the decision was made to prepare a decoy bag, filled primarily with rice flour instead of methamphetamine, that looked identical to the one retrieved by Owens. Owens placed the decoy bag in the location where he found the original bag, and set up surveillance "to see who, if anyone, would come back and pick it up." Id. at 51-52.

Approximately two hours later, Owens observed a Dodge truck approach the area from the south, make a left turn heading west, and stop in the middle of the turn near the bag. The driver, defendant Sparks, got out of the truck, retrieved the decoy bag, and returned to his truck. Owens stopped Sparks as he began to drive away and arrested him.

Sparks' truck was impounded and inventoried by law enforcement officials. During the inventory search, officials found a loaded 9 millimeter handgun in plain view on the driver's side floorboard, a roll of "Saran Wrap type wrapping" similar to the wrapping in the original bag, a green leafy substance, and a smoking pipe. Id. at 136.

Following Sparks' arrest, Owens prepared an affidavit for a search warrant of Sparks' residence. As probable cause for believing relevant evidence would be found there, Owens described the events leading to the arrest of Sparks. Owens further noted that, from the location where the bag was found and Sparks was arrested, Owens "could see . . . Sparks' residence, as indicated by his drivers license, as well as . . . Sparks' place of business." Id. at 12. Owens alleged that, based upon his experiences with drug investigations, it was common for drug dealers to maintain in their residences paraphernalia and "records and ledgers evidencing their trafficking activities." Id. at 13. Based upon Owens' affidavit, a search warrant was issued for Sparks' residence. Officers from the Sequoyah County Sheriff's Office executed the warrant that same day (June 2, 1999) and seized a variety of evidence, including a plastic bag containing an off-white powder substance, stainless steel scales, plastic bags, a revolver and two shotguns, and papers containing "number figures." Id. at 18.

On May 9, 2001, a federal grand jury indicted Sparks based upon his activities on June 2, 1999. Specifically, the indictment charged Sparks with one count of possession with intent to distribute in excess of 400 grams of methamphetamine, in violation of 21

3

U.S.C. § 841(a)(1) and (b)(1)(B), and one count of using and carrying a firearm (the 9 millimeter handgun found in his truck) during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Aplt. App. at 9-10. Sparks was arrested in connection with the federal indictment on May 16, 2001.

Immediately prior to his arrest, Sparks was driving north on a highway that ran through Sallisaw. Detective Owens and Clint Johnson, a member of a local drug task force, followed Sparks' truck and turned on their overhead lights. Sparks parked his truck in the parking lot of a convenience store owned by his family, got out of his truck, and took two or three steps toward the rear of the truck. Johnson got out of his vehicle, approached Sparks, and informed Sparks he was under arrest. Johnson handcuffed Sparks and turned him over to Drug Enforcement Administration agents. After doing so, Johnson, in accordance with Sparks' wishes, removed the keys from the truck and took them inside the convenience store.

Shortly after Sparks was handcuffed, Detective Owens looked into the open driver's door of Sparks' truck and observed some small (2 x 2-inch) plastic bags in the center of the truck's front seat. Johnson, after returning from taking the keys inside the convenience store, also observed the bags. Based upon their observation of the small bags, Owens and Johnson proceeded to search the cab of the truck. They found a wooden marijuana pipe on the floorboard, and more small plastic bags in the ashtray. Owens also searched the bed of the truck and found, inside a brown bag in a bucket, two "eight balls"

4

of methamphetamine packaged in small plastic bags. The brown bag also contained a small plastic bag with approximately four grams of marijuana. The three bags containing drugs were identical to the empty bags found inside the cab of the truck.

Shortly after Sparks' arrest, Johnson prepared an affidavit for a search warrant of Sparks' residence (the same residence that was searched by authorities on June 2, 1999). As probable cause for the search, Johnson outlined the details of Sparks' arrest earlier that day and the evidence that was found in Sparks' truck. Johnson further alleged he had been advised that Sparks, following his arrest, had "admitted to being in possession of approximately one pound of methamphetamine" on June 2, 1999. Aplt. App. at 21. Johnson also alleged he had been advised that, during an interview with a DEA agent on May 5, 2001, Sparks admitted he had in his residence a set of scales of the type "commonly used to weigh controlled dangerous substances." Id. Johnson outlined the results of the search of Sparks' residence on June 2, 1999, noting items of incriminating evidence that had been recovered by law enforcement officials. Based upon all of this information, as well as his training and experience, Johnson opined "that Sparks [wa]s actively involved in the distribution of controlled dangerous substances," and likely was keeping paraphernalia and records of drug transactions at his residence. Id. A search warrant was issued and executed that same day (May 16, 2001). The items recovered from the residence included cash, numerous small bags, two sets of digital scales, plastic containers with a white powdery residue, a pair of night vision binoculars, and two

firearms.  Id. at 26.

Sparks moved to suppress items seized in (1) the June 2, 1999, search of his residence, (2) the May 16, 2001, search of his truck, and (3) the May 16, 2001, search of his residence.[1]  After conducting an evidentiary hearing, the district court granted Sparks' motion in its entirety.  The government has since filed a timely notice of appeal from the district court's suppression order.  See 18 U.S.C. § 3731 (allowing for a government appeal "from a decision or order of a district court suppressing or excluding evidence").

## II.

The government challenges the district court's suppression order in its entirety.  In reviewing the district court's suppression order, we accept the district court's factual findings unless clearly erroneous, review questions of law de novo, and view the evidence in the light most favorable to the prevailing party.  See United States v. Holt, 264 F.3d 1215, 1228 (10th Cir. 2001) (en banc).

*June 1999 search of Sparks' residence*

The district court suppressed evidence found during the June 2, 1999, search of Sparks' residence based on its conclusion that the underlying search warrant was not supported by probable cause.  The district court also concluded that the "good faith

---

[1]     Sparks also filed a motion to suppress statements he made to law enforcement officers following his arrest on May 16, 2001 (e.g., his admission that, on June 2, 1999, he placed the bag of methamphetamine by the side of the road).  That motion was denied by the district court and is not at issue in this appeal.

exception [did] not save the search in question." Aplt. App. at 232.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001) (quoting United States v. Tisdale, 248 F.3d 964, 970 (10th Cir.2001), cert. denied, 122 S. Ct. 1120 (2002)), cert. denied, 122 S. Ct. 1336 (2002). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 1203.

In concluding that the search warrant for Sparks' residence was not supported by probable cause, the district court focused on the affidavit submitted by Detective Owens in support of the warrant. The district court noted that Detective Owens' own probable cause determination (i.e., that drug-related evidence would be found in Sparks' residence) was based primarily on Sparks' arrest earlier that day after picking up the decoy bag. The district court concluded, however, that Sparks' arrest "was invalid." Aplt. App. at 230. More specifically, the district court stated:

> The package in question was in plain view. It was clearly sitting by the
> road for everyone to see. Defendant picking up a strange package outside

7

of his subdivision without more is consistent with innocent activity. Anyone passing by could have picked up the package thinking it was trash or some other dangerous substance which they wanted removed from the neighborhood. There was nothing obvious about the picking up of the package that would lead officers to believe defendant knew it contained drugs. The officers had no other information about this defendant indicating he was involved in drug activities. There was no information from a confidential informant, a controlled buy or information from another surveillance. The only information these officers had was that defendant was the person that picked up the package in question. Further, Detective Owens testified he arrested the defendant immediately after getting into his car. Thus, the defendant had little opportunity to open the package to ascertain its contents. The court finds Detective Owens simply did not have enough facts to lead a reasonable person to believe that an offense had been committed by defendant. (Citation omitted.) Accordingly, there was insufficient probable cause to arrest the defendant at that point in time.

Id. at 231. The district court also concluded that even if Sparks' arrest was valid, the affidavit for the search warrant was still "lacking in probable cause." Id. at 232. According to the district court, Sparks' behavior on the morning of June 2, 1999, "without more," was "consistent with innocent activity." Id. Further, the court noted, "Detective Owens was uncertain if defendant was living in the home outside of town at the time," and "knew the home outside of town was under construction and that defendant owned a home in town as well." Id.

Focusing first on the arrest of Sparks, we conclude the district court erred in characterizing the June 2, 1999, arrest as invalid. It is true that the district court found that the bag was on the side of a public road in plain view.[2] It is further true that at least

---

[2] The government has challenged this factual finding on appeal. During the evidentiary hearing on Sparks' motion to suppress his post-arrest statements, Detective

8

one innocent passerby (i.e., the person who called 911) saw the bag and was curious about its contents. The question here, however, is "the degree of suspicion that . . . attache[d]" to Sparks' actions in retrieving the bag. Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983); see id. (noting that "probable cause requires only a probability or substantial chance of criminal activity," and that, "therefore, innocent behavior frequently will provide the basis for a showing of probable cause"). Although Sparks' actions could theoretically have been innocent, we believe a prudent, cautious and trained police officer more likely would have construed those actions as indicating Sparks was familiar with and had some connection to the original bag containing methamphetamine. See generally Ornelas v. United States, 517 U.S. 690, 700 (1996) (indicating "that a police officer may draw inferences based on his own experience in deciding whether probable cause exists"); United States v. Santana-Garcia, 264 F.3d 1188, 1192 (10th Cir. 2001) ("We measure probable cause against an objective standard and evaluate it in relation to the circumstances as they would appear to a prudent, cautious and trained police officer.");

Owens testified that the bag was in plain view as he walked toward it, and likewise would have been in plain view to a person who was driving by and looking toward it. Aplt. App. at 50-51. Defendant Sparks also testified that the decoy package was in plain view. Id. at 100. During the evidentiary hearing on Sparks' motion to suppress physical evidence seized during the search of his truck and the searches of his residence, Owens testified that the decoy package was beside a small bush or weed of some kind, and would have been difficult for Sparks to see from the direction from which he approached. Id. at 135 ("I don't think he [Sparks] could have seen it."). We are not persuaded that Owens' latter testimony was sufficient to render clearly erroneous the district court's factual finding regarding the visibility of the decoy package to a passing motorist.

9

see also United States v. Arvizu, 122 S. Ct. 744, 750-51 (2002) (indicating that, in determining whether reasonable suspicion exists, police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal quotations omitted).  Unlike the 911 caller, who closely observed the bag and its contents but did not touch it, Sparks acted as though he was familiar with the bag.  In particular, the uncontroverted evidence indicates that Sparks stopped his truck, walked directly to the bag, picked it up (without making any attempt to examine it), and then returned immediately to his truck.  The district court further found that after returning to his truck with the bag, Sparks started to leave.  Aplt. App. at 226 ("The vehicle started to leave and was then stopped by the officers.").  Considered in their entirety, we conclude these circumstances would have led a reasonable person to believe that Sparks was engaged in, or otherwise connected to, the trafficking of methamphetamine (given the large quantity of methamphetamine found in the bag).  Thus, we conclude that probable cause existed for Detective Owens to arrest Sparks.  See United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001) ("An officer has probable cause to arrest if, under the totality of the circumstances, he 'learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.'") (quoting United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998)).

We also conclude the district court erred in holding that Detective Owens lacked a reasonable basis for believing that Sparks lived in the residence identified in the search warrant. According to the evidence, Sparks owned or maintained two residences, one inside the city limits of Sallisaw and one just outside the city limits (within eyesight of where the bag was found). Although Detective Owens did not have conclusive proof that Sparks was living in the residence outside the city limits, he testified that he drove by that residence on a regular basis and had seen Sparks there on numerous occasions. Further, although Owens was aware that construction of a portion of the residence had not been completed (i.e., the exterior brick work), Owens testified that "[f]rom the outside [h]e couldn't tell that [Sparks] didn't live there." Aplt. App. at 178. Lastly, and perhaps most importantly, Owens' affidavit noted that Sparks' driver's license listed that address (i.e., the house outside the city limits) as his place of residence. Id. at 12.

Because the arrest of Sparks was valid and Owens had a reasonable basis for believing that Sparks resided in the house located outside the city limits, we conclude that probable cause existed for the search warrant.[3] Given the large quantity of methamphetamine found in the bag, and given Sparks' apparent connection with the bag (in light of his actions in retrieving the decoy package), it was reasonable for Owens to conclude that Sparks was involved in the distribution of methamphetamine. In turn, it

---

[3]     In light of this conclusion, we find it unnecessary to determine whether the good faith exception outlined in United States v. Leon, 468 U.S. 897 (1984), is applicable.

11

was reasonable for Owens to believe there was a fair probability that additional evidence of crime (e.g., drug paraphernalia and/or sales records) would be found in Sparks' nearby residence. See United States v. Whitner, 219 F.3d 289, 297-99 (3d Cir. 2000) (citing various cases and agreeing that evidence of involvement in the drug trade is likely to be found where drug dealers reside).

*May 2001 search of Sparks' truck*

In suppressing the evidence seized from Sparks' truck following his arrest on May 16, 2001, the district court concluded that the plain view doctrine was inapplicable because Sparks "was arrested at the rear end of the truck" and, therefore, "the officers did not see any evidence of drug activity in plain view at the time they arrested defendant." Aplt. App. at 234. The court further concluded that the automobile exception did not apply because, in its view, the officers lacked probable cause to believe there was contraband in the truck. More specifically, the court concluded that the presence of the small plastic bags on the front seat of the truck was "insufficient probable cause to justify a search of the cab of the truck." Id. at 235.[4]

As recognized by the district court, the search of Sparks' truck potentially implicates two key exceptions to the Fourth Amendment's warrant requirement. The first is the automobile exception. "The Supreme Court has held that 'police officers who have

---

[4]    The district court also concluded that the search in question was neither incident to arrest nor an inventory search. Aplt. App. at 234-35. The government has not challenged these conclusions on appeal.

12

probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'" United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997) (quoting Florida v. Meyers, 466 U.S. 380, 381 (1984)). If this justification for searching a vehicle exists, it does not vanish simply because the vehicle has been immobilized. See United States v. Vasquez-Castillo, 258 F.3d 1207, 1212 (10th Cir. 2001). Nor does it require a reviewing court to determine that the vehicle might have been driven away, or its contents tampered with, during the period required to obtain a search warrant. Id. The second exception is the "plain view doctrine." This doctrine allows a police officer to properly seize evidence of a crime without a warrant if: "'(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent – i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.'" United States v. Carey, 172 F.3d 1268, 1272 (10th Cir. 1999) (quoting United States v. Soussi, 29 F.3d 565, 570 (10th Cir. 1994)); see United States v. Hensley, 469 U.S. 221, 235 (1985) (concluding that, during the course of a lawful stop, police are entitled to seize evidence revealed in plain view in the course of the stop).

Reviewing courts have sometimes utilized both of these exceptions in combination in upholding warrantless vehicle searches. More specifically, if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation,

either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle. E.g. United States v. Reinholz, 245 F.3d 765, 776 (8th Cir.) (approving search of vehicle, which contained drug paraphernalia clearly visible through vehicle's windows, that was parked in driveway of residence being searched), cert. denied, 122 S. Ct. 218 (2001); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (concluding that observation of "[a]n item commonly used in the manufacture of methamphetamine . . . in plain view in the back seat" of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence); United States v. Garcia, 205 F.3d 1182, 1187 (9th Cir.) (concluding officer conducting traffic stop had probable cause to search tissue box after he observed a plastic bag sticking out from between the tissues, and because methamphetamine had already been found in the passenger's possession), cert. denied, 531 U.S. 856 (2000); United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (concluding that officer's plain view observation of the barrel of a gun sticking out from under the seat of a parked car, together with city ordinance prohibiting concealable weapons inside vehicles and state law prohibiting concealed weapons in vehicles, gave the officer probable cause to search the car); United States v. Leshuk, 65 F.3d 1105, 1107 n.1 (4th Cir. 1995) (concluding that presence of wire mesh and potting soil in plain view in bed of truck, combined with the arrest of truck's owner who was in personal possession of marijuana plants, wire mesh, and planting materials, provided probable

14

cause to conduct warrantless search of truck); United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995) (concluding that "combination of the odor of marijuana on [defendant] and [a] marijuana pipe lying in plain view" in defendant's truck provided probable cause for searching the truck). The government relies on the combination of the two exceptions in this case. According to the government, the officers "had probable cause to search the truck based on the plain-view sighting of the plastic baggies [on the front seat of the truck]" and their "knowledge of defendant's drug dealing." Gov't Br. at 27 n.13.

The initial question we must address is whether the small bags on the front seat of Sparks' truck "came lawfully within" Detective Owens' "plain view." Arizona v. Hicks, 480 U.S. 321, 327 (1987). The district court concluded the bags did not lawfully come within Owens' plain view because Sparks "was arrested at the rear end of the truck" and Owens did not observe the bags until after Sparks' arrest. Aplt. App. at 234. Although the district court's factual findings are supported by the record, its subsequent legal conclusion is erroneous. It was uncontroverted that Sparks got out of his truck and left the driver's side door open. Thus, anyone walking by the truck, including Owens, could have looked into the truck and observed the 2 x 2-inch bags in the middle of the front seat. Stated differently, because Sparks left the driver's side door of his truck open, he had "no legitimate expectation of privacy shielding that portion of the interior of" his truck which could have been "viewed from outside the vehicle by either inquisitive

15

passersby or diligent police officers." Texas v. Brown, 460 U.S. 730, 740 (1983)

(citations omitted); see Horton v. California, 496 U.S. 128, 133 (1990) ("If an article is

already in plain view, . . . its observation . . . [does not] involve any invasion of

privacy."). The fact that Owens' observation occurred after Sparks had been arrested

does not affect the legality of the observation. Indeed, the driver's side door of Sparks'

truck presumably would have remained open indefinitely if one of the arresting officers

had not taken some action to close it.[5] Moreover, the bags presumably would have been

in plain view even if the driver's side door of the truck had been closed (i.e., they could

have been seen through one of the windows of the truck).

Having concluded that the bags were lawfully within Owens' plain view, the next

question is whether that observation, either alone or in combination with Owens'

knowledge of Sparks' allegedly illegal activities, provided Owens with probable cause to

search Sparks' truck. Because Owens recognized the bags as being the "size and type

used to distribute drugs," Aplt. App. at 235, we believe it is reasonable to conclude that

they were of an "incriminating character." See Garcia, 205 F.3d at 1187 (concluding that

plastic bag sticking out from between the tissues in a tissue box was of a sufficiently

incriminating character, as least when combined with other factors, to provide probable

cause for additional search). Combined with Owens' knowledge of Sparks' prior drug-

---

[5]     Following his arrest, Sparks asked one of the officers (Johnson) to retrieve the
keys from his truck and take them into the convenience store.

related activities, and the fact that Owens was there to execute an arrest warrant for Sparks which was issued as a result of his indictment for trafficking in methamphetamine, the presence of the small bags on the front seat was sufficient in our view to provide Owens with probable cause to believe that the truck might contain additional evidence of criminal wrongdoing.

*May 2001 search of Sparks' residence*

The district court suppressed evidence seized during the May 16, 2001, search of Sparks' residence because, having found the search of Sparks' truck earlier that day illegal, it concluded the affidavit submitted in support of the search warrant lacked sufficient information to provide probable cause for a search of the residence. Aplt. App. at 236. We agree with the government that the district court's conclusion is erroneous.

For the reasons discussed above, the search of Sparks' truck on May 16, 2001, was legal. Thus, contrary to the conclusion reached by the district court, information regarding the results of that search (i.e., that Sparks was in possession of methamphetamine and small plastic bags commonly used to distribute drugs) legitimately could have been considered in preparing the affidavit, and in turn by the state district court in issuing the search warrant for Sparks' residence. In addition to that information, there was a significant amount of additional evidence that bolstered the affidavit and the probable cause determination. This included (1) Sparks' post-arrest admission to having been in possession of approximately one pound of methamphetamine on June 2, 1999, (2)

17

Sparks' admission to DEA agents on May 5, 2001, that he had a set of scales in his residence, and (3) the results of the June 2, 1999, search of Sparks' residence. Considered together, we believe this information would have led "a prudent person to believe there [wa]s a fair probability that contraband or evidence of a crime w[ould] be found in" Sparks' residence. Basham, 268 F.3d at 1203.

## III.

The district court's order granting defendant Sparks' motion to suppress evidence seized from his vehicle and residence is REVERSED and the case is REMANDED for further proceedings.

**01-7097, United States v. Joe Wayne Sparks**


**SEYMOUR, Circuit Judge, concurring in part and dissenting in part:**


In my judgment, the police lacked probable cause to arrest Mr. Sparks on June 2, 1999 for stopping to pick up a package on the side of the road. I therefore respectfully dissent from the majority's reversal of the district court's order invalidating the warrant for the June 2, 1999 search of Mr. Sparks' home. For different reasons than the majority, as I explain below, I agree that the May 16, 2001 search of Mr. Sparks' truck was supported by probable cause.


*June 2, 1999 Arrest and Search*

I disagree that Mr. Sparks provided the police with probable cause for his arrest by merely stopping his vehicle and picking up a package in plain view[1] on the side of the road close to his own residence.[2]

---

[1] The district court found that the decoy package was in plain view and this finding was not clearly erroneous, as the majority acknowledges.

[2] Picking up packages by the side of the road may not be an activity that we, as judges, often undertake. However, for many Americans abandoned articles may provide the necessities of life. See, e.g., MELISSA FAY GREENE, PRAYING FOR SHEETROCK (1992) (relating the story of impoverished people in rural Georgia who, unable to purchase building materials, "prayed for sheetrock" to fall from passing trucks so they could fix their dilapidated homes). The majority's opinion now makes such activity an arrestable offense if the roadside package happens to contain drugs.

I have no quarrel with the majority that the probable cause inquiry is one based on a totality of the circumstances, Illinois v. Gates, 462 U.S. 213, 238 (1983), and requires only a "probability" or "substantial chance" of criminal activity, id. at 243 n.13; see also Beck v. Ohio, 379 U.S. 89, 91 (1964).  I also agree a possible innocent explanation does not provide a safe harbor for activity that also gives rise to the probability of criminal activity.  See Gates, 462 U.S. at 243 n.13 ("By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause").  However, these cases do not dictate that a single instance of innocent-appearing conduct provides probable cause.  In fact, Supreme Court cases and those from our circuit support my view that probable cause did not exist for the June 2 arrest.

"Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998) (citation and quotation omitted).  Probable cause thus requires a reasonable probability both that there is criminal conduct afoot and that the particular individual police suspect is the person engaged in that conduct.  Id.

The connection between Mr. Sparks and the illegal conduct was sparse at best. While the police had concrete information of criminal conduct because they knew the original package contained methamphetamine, the mere fact that Mr. Sparks stopped to

pick up the package is insufficient to connect him with that criminal conduct. See, e.g., Ybarra v. Illinois, 444 U.S. 85, 90-92 (1979) (police lacked probable cause to search defendant who was merely present in tavern in which bartender was selling heroin); United States v. Anderson, 981 F.2d 1560, 1566 (10th Cir. 1992) (no probable cause to arrest defendant whom police saw visiting and leaving residence that contained marijuana, parking in same parking lot with a U-Haul previously seen at same residence, and driving cautiously when he might have known police were following him). The act of stopping and retrieving a package in the road is not criminal and is insufficient, on its own, to warrant a reasonable belief that Mr. Sparks was engaging in or planning to engage in criminal conduct. See, e.g., United States v. Welker, 689 F.2d 167, 169 (10th Cir. 1982) (one action susceptible of multiple innocent interpretations does not provide probable cause for arrest). While Mr. Sparks' singular act might warrant suspicion due to the nature of the package, more than suspicion is required to establish probable cause. See Vazquez-Pulido, 155 F.3d at 1216 ("Probable cause to arrest does not require facts sufficient to establish guilt, but it does require more than mere suspicion.") (emphasis added; citation omitted)).

The fact that the police here knew the original package contained methamphetamine does not remedy their lack of information connecting Mr. Sparks to any illegal activity or intent. A person's association with a place or person known to be involved in criminal conduct does not constitute a sufficient connection to that place or

-3-

person to provide probable cause for arrest. See Ybarra, 444 U.S. at 90-92 (1979) (no probable cause where "agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale."); Sibron v. New York, 392 U.S. 40, 62 (1968) (no probable cause where the only suspicious activity police observed was defendant talking to several known drug addicts over eight-hour period); see also United States v. Springfield, 196 F.3d 1180, 1183 (10th Cir. 1999) ("'nearness to the place of the arrest of a co-conspirator or to the place of illegal activity' is not sufficient to establish probable cause.") (quoting Vazquez-Pulido, 155 F.3d at 1216)); United States v. Dozal, 173 F.3d 787, 792 (10th Cir. 1999) (citing United States v. Hansen, 652 F.2d 1374, 1388 (10th Cir. 1981) (merely traveling with drug dealers does not create probable cause for arrest)).

We have held there is no probable cause for arrest even where a person's association is less fleeting or coincidental, as it was here. See Anderson, 981 F.3d at 1566. In Anderson, the defendant was observed at a home that contained marijuana, parked his car in the same parking lot as a rental truck also seen at the home with drugs, and drove carefully while he was being followed by police. Id. at 1562-63. We held this information did not establish probable cause for arrest, stating "[a]lthough [the defendant] showed some association with the [suspicious] residence, he did not otherwise take actions that would warrant believing he had committed or was committing

-4-

a crime." Id. at 1566. Similarly here, the fact that Mr. Sparks stopped and picked up a package in plain view on a public road simply provided too little indication his actions or intentions were criminal.

Mr. Sparks' singular act of picking up the package is consistent with innocent activity.[3] We have previously held that a singular instance of an activity that has an innocent explanation does not provide probable cause for arrest. See Welker, 689 F.2d at 169. The defendant's conduct in Welker is comparable to Mr. Sparks' actions here. The police in Welker saw the defendant walk up to a mailbox, retrieve a letter, and continue down the street. Id. at 168. The defendant's actions took place in broad daylight without any furtiveness, and the defendant did nothing else suspicious. Id. Here, Mr. Sparks was making a turn near his home, stopped upon seeing the package, retrieved the package, and returned to his truck to drive away, all in broad daylight and without apparent furtiveness or other suspicious actions.

The case cited by the majority in support of its proposition that there is probable cause here, United States v. Santana-Garcia, 264 F.3d 1188 (10th Cir. 2001), is hardly comparable because there were substantially greater indications of possible criminal activity in that case than there are here. In Santana-Garcia, the two persons stopped for a

---

[3]In this respect I disagree with the majority that because Mr. Sparks went directly to the package and brought it back to his truck it is likely he was "familiar with" the bag, Op. at 9. The package was in plain view and Mr. Sparks left his truck mid-turn in the road to retrieve it, making his immediate return to the truck necessary.

traffic violation admitted they were in the country illegally, police observed air fresheners in the car, and pursuant to a consensual search police found duct-taped packages hidden behind the glove box and dashboard radio, next to an additional air freshener. Id. at 1190-91 & n.2. While each of these actions has possible non-drug explanations, together they provide sufficient information for a prudent officer to conclude there is a reasonable probability of criminal activity. See Beck, 379 U.S. at 91; Gates, 462 U.S. at 238, 241-45. Moreover, the packages the police found in Santana-Garcia were not simply out of plain view but hidden behind parts of the car itself, 264 F.3d at 1191, giving rise to suspicion much greater than that justifiable where, as in this case, the package was in plain view and the defendant's actions with respect to the package were undertaken openly.

Similarly, the cases cited by the government do not support its contention that there was probable cause here. In United States v. Gordon, 173 F.3d 761, 766-67 (10th Cir. 1999), the facts we held established probable cause for arrest were as follows: the defendant was traveling under a false name, bought a one-way train ticket using cash, and consented to a search that revealed he was carrying $28,000 in cash and two brick-shaped plastic wrapped packages. We held there was probable cause for arrest, rejecting the argument that police lacked probable cause at the time of arrest because they did not know the packages contained illegal drugs. Id. We rejected the argument because, even without that knowledge, the police had directly observed a number of actions by the

-6-

defendant that were suggestive of drug-related activity. In addition, the packages were found in baggage the defendant himself carried on the train and identified as his. Id. Thus, the police had information about several suspicious circumstances that were, moreover, all directly connected to the defendant. Here, the police had no prior knowledge that Mr. Sparks was in any way connected with illegal drug activity or any other criminal conduct, his conduct was not furtive, and the police had no other indication of criminal activity on the part of Mr. Sparks. The basis for suspicion here was paltry under our case law.[4]

In sum, our cases tell us that an isolated action as consistent with lawful conduct as with illegal conduct, where there is no other indication the actor is connected with illegal activities, does not provide probable cause for the actor's arrest. As a result, the search warrant for Mr. Sparks' home was also unsupported by probable cause. I would affirm the district court's grant of Mr. Sparks' motion to suppress evidence discovered in that search.

---

[4]The cases from the other circuits cited by the government are also easily distinguished from this case because of the multiple suspicious activities of which police were aware in those cases. See United States v. Carrillo, 269 F.3d 761, 766-67 (7th Cir. 2001) (police had probable cause for arrest where they were informed defendant installed remotely-locking compartments in twelve vehicles, observed movement of those vehicles from house to house suggestive of drug trafficking over period of time, and defendant drove evasively two times police were following); United States v. Strickland, 144 F.3d 412, 415-17 (6th Cir. 1998) (holding probable cause for arrest where informant identified defendant, set up drug sale with defendant, and police observed defendant engaged in actions consistent with drug sale but did not verify the package exchanged contained illegal drugs before making arrest).

*May 16, 2001 search of Mr. Sparks' Truck*

I join in the conclusion that there was probable cause for the vehicle search in May 2001 but for different reasons than the majority. Because Officer Owen was directly involved in the 1999 arrest and search, which I believe was invalid, it is questionable in my view whether he may rely on the information he gained from those actions for probable cause to search Mr. Sparks' truck. Moreover, I agree with the majority's suggestion that the baggies sitting on Mr. Sparks' car seat, taken alone, did not provide probable cause for a vehicle search. The baggies are of a type commonly used for crafts, and it cannot be that every person driving around with a common household item such as this in their car, left there by them or their children, has created a reasonable probability of their involvement in the drug trade. Nevertheless, I agree with the majority that there was probable cause for the search of Mr. Sparks' truck in May 2001 because Officer Johnson had probable cause for the search.

Officer Johnson, like Officer Owen, could not rely solely on the presence of the baggies in the front seat to conclude there was a reasonable probability they were for criminal rather than innocent use. In addition to the baggies, however, Officer Johnson possessed drug-related information about Mr. Sparks in the form of the arrest warrant upon which Officer Johnson could reasonably rely for the search. The arrest warrant pursuant to which the officers arrested Mr. Sparks on May 16, 2001 was for the charge, inter alia, of possession with intent to distribute methamphetamine and use of firearms in

drug trafficking. While these charges were based on information gained through the invalid arrest and search conducted in June 1999, Officer Johnson was not directly involved in these activities, nor did he have reason to believe those activities were unlawful. Mr. Sparks has not alleged the arrest warrant had any facial shortcomings. Therefore, while the warrant was invalid, Officer Johnson could in good faith rely on the information contained therein. See United States v. Leon, 468 U.S. 897, 919-21 (1984) (police may rely on invalid warrant if that reliance is reasonable under the circumstances, including that officer has no reason to believe warrant or information on which it is based is invalid or insufficient).

The nature of the charges contained in the arrest warrant gave Officer Johnson reason to believe Mr. Sparks was involved in illegal drug trafficking. With this good-faith belief in hand, Officer Johnson had a reasonable basis for believing the baggies he saw on the truck seat were likely to be related to drug activity rather than an innocent pursuit. On this basis, I concur in the judgment that the search of Mr. Sparks' car on May 16, 2001 was justified by probable cause. It follows that the May 2001 search of Mr. Sparks' house was proper as well. I respectfully dissent, however, from the conclusion that probable cause existed for the arrest of Mr. Sparks in June 1999 and the search of his residence based on that arrest.